FRANCIS E. PARKER & another, trustees, *vs.* EULALIE MARY IASIGI.

SAME *vs.* WILLIAM F. APTHORP.

Suffolk.    Nov. 14, 1884. — Jan. 10, 1885.    FIELD, DEVENS, & COLBURN, JJ., absent.

A testator, by the third article of his will, devised a parcel of land to his wife for life, and on her decease devised the same to his children then living. He also provided that, if his wife desired the land to be sold, he authorized his executors and trustees to sell the same, pay the proceeds to his trustees, to be invested by them, the income thereof to be paid to his wife for life, and the principal to be disposed of in accordance with the provisions regulating the distribution of the trust fund as provided in the next article of his will. By the fourth article, he bequeathed to trustees a sum of money, in trust to pay the net income to his wife for life, and on her death to distribute the principal among his children then living. The fifth article directed that all " moneys " bequeathed to each of his daughters should be managed by the trustees in separate trusts, and the income only paid to each daughter during her life, and on her death " the principal sum " should be " distributed " in a way specified. A subsequent article directed that all " moneys " directed to be given to his sons A. and T. should be managed by his trustees in separate trusts, they to receive only the income for life. By the ninth article, the residue of the testator's

property, real, personal, and mixed, was devised to trustees, in trust to pay over the income to the children equally, and on a certain day, if the fund was then large enough to give each child a certain sum, to distribute the principal among the children. The eleventh article authorized the trustees to sell " any and all of my said trust property and estate, both real and personal," preserving to the wife the rights given by the third article of the will. The only land owned by the testator was that mentioned in the third article of the will, and this was not sold during the lifetime of the testator's widow. *Held,* that the trust estate did not include this land, and that the gift to the children in fee contained in the third article of the will was not controlled by the subsequent articles.

THE FIRST CASE was a writ of entry, dated March 17, 1884, and brought by Francis E. Parker and Joseph A. Iasigi, as trustees under the will of Joseph Iasigi, to recover one undivided tenth part of a parcel of land on the northwesterly corner of Mount Vernon Street and Joy Street in Boston. Plea, *nul disseisin.* The case was submitted to the full court on agreed facts, in substance as follows:

Joseph Iasigi died on May 22, 1877, seised in fee of the land in question, which is that specified in the third article of his will, hereinafter set forth. His will, which was duly admitted to probate, after bequeathing to his wife, Eulalie Iasigi, certain personal property, proceeded as follows (certain clauses not material to the determination of the question in issue being omitted):

" Third. I give, devise, and bequeath to my wife, the said Eulalie Iasigi, the use, income, and improvement of my house and real estate on Mount Vernon Street, in said Boston, which is numbered forty-three in the numbering of said street, and of my house and real estate on Ocean Street, in Lynn, during her natural life, she paying the taxes assessed thereon, and keeping the same in good order and repair, and properly and sufficiently insured against loss or damage by fire; and, at her decease, I give and devise said real estate to my children who shall then be living, and to the issue, if any, of any deceased child or children, *per stirpes* and not *per capita,* equally, share and share alike.

" If my wife, the said Eulalie Iasigi, shall desire the sale of either or both of said parcels of real estate, I hereby authorize and empower my executors and trustees hereinafter mentioned to sell and dispose of the same, or any part thereof, either at public or private sale, for such price and upon such terms as they shall see fit; and to execute to the purchaser or purchasers thereof all deeds and other instruments of conveyance which

may be necessary or proper to invest him or them with a valid title to the property or estate purchased. The proceeds arising from such sale or sales shall be paid to my trustees, to be by them safely invested and managed, and the income thereof during the life of my wife; and the principal thereof, with any accretions thereon, after her decease, shall be applied and disposed of in accordance with the provisions regulating the management and distribution of the trust fund established by the next succeeding article of this will.

"Fourth. I give and bequeath to Francis E. Parker, esquire, of said Boston, and to my son, Oscar Iasigi, the sum of two hundred thousand dollars; in trust, nevertheless, that they shall prudently invest and manage the same, and pay the net income thereof to my wife, the said Eulalie Iasigi, during her life, in equal quarter-annual payments; but no payment shall be made in anticipation, or except upon her written order or request; and, at her decease, that they shall pay over and distribute the said trust fund, and the income, if any, which shall have accrued thereon, to and among my children who shall then be living, and the issue, if any, of any deceased child or children, *per stirpes* and not *per capita*, equally, share and share alike; holding, nevertheless, in trust, such distributive shares of my estate as are herein directed to be so held.

"Fifth. All moneys herein bequeathed to each of my daughters, Eulalie Mary Iasigi, Sarah Catherine Iasigi, Elizabeth Frances Iasigi, Octavie Iasigi, and Mary Natalis Iasigi, shall be safely invested and managed by my said trustees in several and separate trusts; and the net income of each daughter's share of my estate under this will shall be paid to her, during her life, upon her separate receipt, but not by way of anticipation; and, upon her decease, my said trustees shall pay over the principal sum of her said several share, with the interest, if any, which shall have accrued thereon, to her issue then living, if she shall leave issue surviving her; but if she shall die, leaving no issue surviving, then said several principal sum, with the interest, if any, thereon, shall be distributed to and among her surviving sisters, and the issue, if any, of any deceased sister or sisters, by right of representation, equally, share and share alike; each surviving sister's share to be held upon like terms and trusts.

"If all my said daughters shall die, leaving no issue surviving, the principal sum of said trust fund, with all accretions thereon, shall, upon the death of the last survivor, be distributed to and among those who would be my heirs at law, if I had then deceased, in accordance with the statutes which shall then be in force in said Commonwealth, regulating the distribution of intestate estates.

"Sixth. All moneys herein directed to be given to each of my sons Augustus D. Iasigi and Thomas G. Iasigi shall be held, invested, and managed by my said trustees in separate trusts, and the net income of his several share paid to each of said sons, Augustus D. and Thomas G., during his life, upon his receipt in writing therefor, at such times, in such manner, and in such sums as to my said trustees shall seem fit; and, at his decease, the principal sum of said several trust fund, with the income, if any, which shall have accrued thereon, shall be paid to and distributed among his issue surviving; — but if the said Augustus D. or Thomas G. shall die leaving no issue surviving, then said principal sum, and the accumulations thereon, shall be distributed among his surviving brothers and sisters, and the issue, if any, of any deceased brother or sister, by right of representation, equally, share and share alike.

"Seventh. All the moneys herein directed to be paid to my son Albert William Iasigi shall be held, invested, and managed by my said trustees, and the net income thereof paid to him, upon his receipt in writing therefor, at such times, in such sums, and in such manner as my said trustees shall deem expedient, until he shall attain the age of twenty-five years; and upon his attaining the age of twenty-five years, my said trustees shall pay over to him the principal sum of said last-mentioned trust fund, with the income, if any, which shall have accrued thereon. My son, the said Albert William, may dispose of his portion by will, after attaining the age of twenty-one years; but if he shall decease intestate, the portion then held in trust for him shall be paid to and distributed among those who would be entitled thereto, if he had deceased possessed thereof as personal property. . . . .

"Ninth. All the rest and residue of my property and estate, of every description, real, personal, and mixed, of which I shall

die seised or possessed, or to which I shall be entitled at the time of my decease, I give, devise, and bequeath to the said Francis E. Parker, esquire, and Oscar Iasigi, in trust, nevertheless, that they shall prudently invest and manage the same, and keep the same invested until the first day of January in the year of our Lord one thousand eight hundred eighty, except as hereinafter provided, paying over and distributing the net income thereof, in the mean time, to and among my children equally; and on said first day of January in the year one thousand eight hundred eighty, or sooner, if such distribution will give to each of my children a sum of money amounting to not less than fifty thousand dollars, they shall pay over and distribute the principal of said last-mentioned trust fund to and among my children who shall then be living, and the issue, if any, of any deceased child or children, by right of representation, equally, share and share alike.

"Tenth.  If, after the foregoing provisions for the benefit of my wife shall have been satisfied, the residue of my estate shall be sufficient for the purposes of this item, I direct that the sum of twenty-five thousand dollars shall be paid to each of my eldest two sons, Oscar Iasigi and Joseph A. Iasigi, that they may not be embarrassed in continuing the business in which they are now engaged.  These sums shall be considered advancements, and an interest account thereof shall be kept, and the sums so advanced shall, in the final division of my estate, be deducted from the shares of said Oscar and Joseph A., — it being my desire and purpose that all my children shall ultimately share equally in my estate.

"Eleventh.  I authorize and empower my said trustees and the survivor of them, and their successors in these trusts, to sell, at public auction or private sale, any or all of my said trust property and estate, both real and personal, and any and all other property and estate, both real and personal, which they may acquire as my trustees, whenever they shall see fit to do so, preserving to my wife all the rights given to her by the third article of this will; and upon every such sale, to execute to the purchaser or purchasers of such property or estate, or any part thereof, all such deeds and other instruments of conveyance as may be necessary and proper to convey to him or them a good

and valid title to the property or estate purchased. My said trustees and the survivor of them, and their successors in these trusts, shall hold, manage, and dispose of the proceeds of all such sales in the same manner and for the same purposes in and for which they held the property or estate so sold; — but no purchaser shall be responsible for the application of the purchase money.

" Lastly. I nominate, constitute, and appoint the said Francis E. Parker, esquire, and Oscar Iasigi, to be the executors of this my last will and testament."

The demandant Francis E. Parker and Oscar Iasigi, named in the will as trustees, duly qualified and acted as trustees under the will. Oscar Iasigi died on January 18, 1884, and the demandant Joseph A. Iasigi was, on February 25, 1884, duly appointed trustee in his place.

The testator left ten children surviving him, all of whom also survived the testator's widow, who died on December 27, 1883. The tenant is one of said children.

The testator was not, at the time of making his will, or at any time afterwards, entitled to any real estate other than that specified in his will, and none of his real estate was sold in his widow's lifetime.

· If the court should be of opinion that the legal title to the undivided tenth part of said land, which was given by the third clause of the testator's will, at the decease of his widow, to the tenant, was or became vested in the trustees under said will, judgment was to be entered for the demandants; otherwise, for the tenant.

THE SECOND CASE was a writ of entry to recover one undivided tenth part of the same estate. It was submitted to the full court, on agreed facts, which differed from those in the first case only in this, that the tenant derived his title by a deed dated January 16, 1884, executed by the testator's son Augustus D. Iasigi.

*L. S. Dabney*, for the demandants.

*J. L. Thorndike*, for the tenants.

C. ALLEN, J. The true construction of this will is certainly very obscure, and we cannot be certain that we arrive at the actual intention of the testator, in respect to the questions which

have been submitted to us. But the conclusion to which we have come is, that the trust estate under the will did not include the houses and real estate owned by the testator, and that these actions cannot be maintained.

In the first place, it is conceded that the third article of the will contains language which, taken alone, sustains the claim of the tenants. In that article, the testator gave, devised, and bequeathed to his wife the use of said houses and real estate, during her life; "and, at her decease, I give and devise said real estate to my children who shall then be living, and to the issue, if any, of any deceased child or children, *per stirpes* and not *per capita*, equally, share and share alike." Authority was given to his executors and trustees to sell the same, if his wife should desire it; and the proceeds of such sales were to be paid to the trustees, to be by them safely invested and managed, and the income and principal thereof were to be applied and disposed of in accordance with the provisions regulating the management and distribution of the trust fund established by the next succeeding article of the will; that is to say, the net income was to be paid to his wife during her life, and at her decease the trust fund was to be paid over and distributed to and among his children who should then be living, and the issue, if any, of any deceased child or children, "holding, nevertheless, in trust, such distributive shares of my estate as are herein directed to be so held."

Then comes the fifth article, which furnishes the main ground of the demandants' contention in the action against the testator's daughter. This article does not of itself contain any bequest of property, but it is designed to regulate the management and distribution of the bequests therein referred to. All the gifts which are made to the testator's daughters are contained in the third article, already referred to, the fourth article, under which they are entitled to share in the trust fund of $200,000 after the death of their mother, and the ninth article, under which they are entitled to share in the residue ; and it appears by the latter portion of the ninth article that the testator contemplated that the final distribution of this residue should be made in money, and ample authority was given in the eleventh article to convert it into money. The gifts in

the fourth and ninth articles would naturally be referred to as moneys.

The gift in the third article, looking only at the language contained in that single article, might be real estate, or moneys, according as a sale might or might not have been made in pursuance of the authority therein conferred. No case has been found by the research of counsel in which the word "moneys" has been held sufficient to include real estate; but it is contended that the provision in the fifth article, that "the net income of each daughter's share of my estate under this will shall be paid to her during her life, . . . . and upon her decease my said trustees shall pay over the principal sum of her said several share . . . . to her issue," &c., shows an intention to include their interest in the two houses under the trust, even though the same should not be sold during the mother's life, and that it has the effect to cut down or limit the title which they otherwise take under the third article in the will. The main consideration in support of the opposite view of the fifth article is, that it was not intended to define the gift, but only to regulate the management and distribution thereof; and that the word "estate" means, by reference, the same thing as "moneys," before mentioned at the beginning of that article; and, looking at it in this aspect, that the words mean that the net income of each daughter's share of his estate, so far as the same should be held in trust under this will, shall be paid to her, without in any manner defining what that share shall be taken to include. The latter view derives some confirmation from the fact that all the other significant words of the article are specially appropriate for personal estate; for example, "pay over," "distribute," "principal sum," and "interest." Moreover, since the third article contains, when taken by itself alone, a clear gift of real estate, the addition of equivocal expressions of, or contrary tendency in, a later portion of the will, ought not to prevent the gift from taking effect absolutely, unless, on the whole, an intention so to limit it can be fairly inferred. The fact that in the sixth and seventh articles, directing moneys given to certain of the testator's sons to be held in trust, the words are wanting which are specially relied on in the fifth article to show that real estate was intended to be included in the trust, has some tendency to show that no such

effect was designed to be given to them; unless indeed it should be thought that the testator meant to make a distinction in this respect between his daughters and these sons. In all of these cases, it seems probable that, if the testator had intended to put the real estate in trust, he would have said so in some plainer terms than are to be found in the will.

Full effect can be given to the provision of the eleventh article, authorizing the trustees to sell " any or all of my said trust property and estate, both real and personal," by referring it to the ninth article, in which the testator gives in trust all the rest and residue of his property and estate, of every description, real, personal, and mixed, of which he shall die seised or possessed; clearly contemplating that, under the ninth article, the trust property may include real estate of which he may thereafter become the owner. Certainly the eleventh article was not intended to authorize the trustees to sell the two houses in the lifetime of the testator's widow, without her consent; and no very distinct meaning can be given to the clause, " preserving to my wife all the rights given to her by the third article of this will," as no construction by which the trustees could interfere with those rights would be open to even a plausible argument in its favor. No clear inference can be derived from this clause, that the interests of the daughters in the two houses were regarded as trust estate during the lifetime of the testator's widow, and that such interests might be sold by the trustees, subject to the widow's right for life.

The circumstance that, if the houses should be sold, the proceeds were to be held in trust, and that, upon the tenants' construction, if not sold, the daughters will hold their shares absolutely, though entitled to consideration, is by no means decisive.

On the whole, recognizing that the true construction of the will is open to much doubt and uncertainty, we think it better to adhere to the plain language of the third article, and to hold that the gift therein contained is not cut down or controlled by the equivocal expressions in other parts of the will.

*Judgments for the tenants.*