THE UNITED STATES OF AMERICA *vs.* JOHN II ESTATE, LIMITED, an Hawaiian Corporation, *et al.*

September 1, 1910.

*Supreme Court, Territory of Hawaii—Construction of laws—Federal court of Hawaii:*    The federal court in Hawaii will follow the construction of the laws of the Territory made by its highest court.

*Same—Same—Same:*    A suggestion of a probable construction of

municipal law by the highest court of the Territory of Hawaii, not adopted by the court making it, is not binding on the federal court of such Territory.

*Jurisdiction of Supreme Court of the Territory of Hawaii over reserved questions from judge:*   The Supreme Court of Hawaii has no jurisdiction of questions reserved to it by the circuit judge sitting in equity at chambers and a decision of such questions by the Supreme Court is void.

*Same—Decree:*   The decision of such reserved questions by the Supreme Court is without legal effect, unless it is made the basis of a decree by the judge reserving them.

*Jurisdiction of subject matter—of the person:*   Jurisdiction of the subject matter cannot be conferred by consent or waiver, but jurisdiction of the person may.

*Waiver by minors:*   Minors may waive objection to errors apparent on the record that do not involve jurisdiction of the subject matter.

*Decree on demurrer—Res adjudicata:*   If a suit is dismissed on demurrer on the ground of defective pleadings or any ground which does not go to its merits, the decree or judgment will be no bar to another suit.

*Same—Issue:*   Where a decree "refers to the opinion of the trial judge in terms that make it clear that the object was to refer to it to explain what was determined, and the reasons therefor, then such opinion becomes a part of the record, and must be looked to to explain what was in issue and what was determined by the  *  *  *  decree in question."

*Same—Same—Opinion affirming:*   The opinion of the court affirming such decree is inadmissible to show that the question determined was different from that in the record.

*Minors as parties—Representation—Jurisdiction:*   Where minors are alleged plaintiffs in a suit in equity and the bill is signed by their next friends, who also are parties plaintiff, with their own names only, and the names of counsel are typewritten, no jurisdiction is acquired over them; and such a bill is good only as the bill of such next friends.

*Same—Representation of hostile interests by same counsel and next friends:*   Where minors and their mother were represented by the same counsel and next friends in proceedings that resulted in the consideration of an issue not intended to be raised by the bill, and yet probably within its scope, in which issue such minors and their mother had hostile interests, and which was decided in favor of the mother; *held,* that the minors were not represented in the trial of such issue and did not have their day in court.

*Devise of fee—Of life interest—Contingent devise:*   Where the terms of a devise, with a devise over, contingent on the death of the first devisee without issue, show an intention that the first devisee shall take a fee upon the death of the testator, the contingency is the death of the first devisee, without issue, during the life of the testator, but, surviving the testator, he takes an absolute estate in fee simple.   But where the terms of the first devise are indefinite and not inconsistent with a construction by which

only a life interest is given, it creates a life interest only, there being no obstacle to carrying out the contingent devise.

*Rule in Shelley case:*   The rule in Shelley's case will not be allowed to defeat the clear intention of a testator.

*Rule of property—Stare decisis:*   There being no construction of statutes or findings establishing business methods, and no series of decisions settling any legal principle relating to property, no rule of property has been created and the rule of *stare decisis* cannot be said to apply.

*Estoppel:*   Estoppel will only apply against one where there has been some act by him which has induced a change of position of those who allege the estoppel, or their privies in accordance with his real or apparent intention.

*Estoppel against minors:*   Estoppel does not run strictly or at all against minors.

*Translation—Discrepancy:*   A translation of a clause that removes a discrepancy is preferred to one that fails to do so, if it is reasonably within the bounds of grammatical and etymological interpretation.

Status of transactions entered into in good faith, under decisions in the first and second cases, considered.

*Proceedings under the law of Eminent Domain*:   Hearing for distribution.

*Robert W. Breckons,* U. S. District Attorney, for Plaintiff.

*A. G. M. Robertson* (withdrawn on January 31, 1910, on account of appointment as U. S. District Judge), and *Thompson, Clemons & Wilder,* Attorneys for Claimants.

*Magoon & Weaver,* Attorneys for Defendant.

DOLE, J.   The court having awarded the sum of ten thousand dollars to the defendants herein, as compensation for their claim and interest in the real property condemned and taken in these proceedings for the use of the plaintiff under the law of eminent domain, and such sum of ten thousand dollars having been deposited by the plaintiff in the registry of the court, subject to further proceedings for the determination of the respective claims of the defendants to the said fund, and notice accordingly having been served on the defendants or their counsel, the following claims were presented and tried before this court, to-wit:

By the said John Ii Estate, Limited, one of the said defendants, ten thousand dollars, being the whole of the said fund;

By the said George Ii Brown, one of the said defendants, who has since the beginning of these proceedings arrived at the age of majority,—"a one-third share or interest in said fund, subject to the life interest therein of the said Irene Ii Holloway, or the said John Ii Estate, Limited, as the assignee of her life interest," and

By the said Francis Hyde Ii Brown, a minor, one of the said defendants, by A. G. M. Robertson, his guardian *ad litem,* "a one-third share or interest in said fund, subject to the life interest therein of the said Irene Ii Holloway, or the said John Ii Estate, Limited, as the assignee of her life interest."

For convenience wherever used in this decision, the word Estate shall mean John Ii Estate, Limited; the word Irene,— Irene Ii Brown or Irene Ii Holloway, as the case may be; the word George,—George Ii Brown; the word Francis,—Francis Hyde Ii Brown, and the word Children,—the surviving children of C. A. Brown and Irene Ii Brown, being the said George and Francis.

It appears that on April 7th, 1894, after the marriage of the said Irene with the said C. A. Brown, and the birth of her three children, two of whom are now surviving in the persons of George and Francis, A. F. Judd,—one of the executors of the last will of John Ii, deceased, the father of the said Irene, and one of her guardians, after being discharged as such guardian, brought a bill in equity before a circuit judge of the first circuit, for himself and as next friend of the said Irene and her said surviving children, against the said C. A. Brown; and that thereafter, on August 10th of the same year, an amended bill was substituted therefor, with the same parties as plaintiffs and defendant, except that Sanford B. Dole, administrator with the will annexed and guardian, was joined therein as an additional party plaintiff. Such amended bill alleged, among other things, an omission in the copy of the will furnished by the court to the said A. F. Judd, whereby the said executors

and guardians not being fully advised of the true nature and intent of the said will, procured their discharge as guardians of the said Irene upon her marriage; but, that upon becoming acquainted with the complete will, believed that they were thereby constituted not only executors of the will and guardians of the said Irene, but also trustees with the right to the control of her estate during her life; and that under and by said will provision was made for the children of said Irene and also for the support of said Irene, and it was important to obtain a construction of such provisions and the relative rights under said will of such minor children and the said Irene and the said C. A. Brown in and to the said estate, and to the income thereof, and the duties of the said trustees to the several beneficiaries aforesaid under said will, and prayed, among other things, "that the terms and provisions of said will and the duties and obligations imposed upon the said A. F. Judd and S. B. Dole as aforesaid be defined and determined."

After proceedings before Judge Cooper, a circuit judge of such circuit, who resigned his office before reaching a decision, the matter came up before Judge Perry of the same circuit, who, on the 16th day of April, 1896, reserved certain questions of law to the Supreme Court, as follows:

1.   Was a trust created in the property devised to Irene Ii by the will of her father John Ii?

2.   If such a trust was created, is the trust still in force, Irene having married, attained majority and had issue of said marriage, which issue still survive?

3.   If such a trust still exists, is the interest of Irene Ii Brown under the same absolute or for life only?

4.   If such a trust still exists, is it such a trust that the court will upon the proper motion order an immediate conveyance of the property to Irene Ii Brown?

5.   Has Irene Ii Brown a fee simple title in said property, or is her estate one for life only?

6.   Was an estate in perpetuity created by said will and if so was its effect to vest the estate absolutely in Irene Ii Brown?

7. If there are any remainders in said property, are they vested or contingent and in what person?

8. What legal and equitable estates have the several parties plaintiff and defendant under the will of John Ii and the circumstances shown by the pleadings and evidence?

The Supreme Court, on the 4th of May, 1897, ruled that the first question should be answered in the affirmative; that as to the second question, the trust became extinct upon the marriage and majority of the devisee Irene, and that as to the fifth question the devisee Irene had an estate in fee simple in the property devised to her by her father's will. It was considered by the court that it was unnecessary to decide the other questions, in view of the rulings already made. No further proceedings appear to have been taken. The case was not remanded to the circuit court and no decree was entered in either court. This case will be hereafter referred to as the first case.

On the 27th of January, 1903, a bill in equity to declare and execute a trust was filed in the same circuit court by the said A. F. Judd, as next friend of George and Francis, minors, against C. A. Brown, John A. Magoon and Irene; which bill, after narrating the history of the proceedings relating to the estate of the said John Ii, deceased, alleged that the said will directed that if the said Irene should die, having borne children, the said property should descend to her children, but that she should be the first heir, meaning and intending thereby that during her life she should have the use and benefit of the said property, and that her children, by virtue of said will, are "the absolute owners in fee" of the same, subject only to their mother's life estate; and further alleged the divorce of the said Irene from the said defendant C. A. Brown, and the execution of a deed of conveyance by them of the "said property" in trust for the organization of a corporation to hold the same and to deliver one-third of the shares thereof to the said Irene, one-third to the said Brown, and a third to the plaintiffs, which corporation was duly organized under the name of The John Ii Estate, Limited, and delivery of shares made accordingly, ex-

cept that one share of those to be issued to said C. A. Brown was caused by him to be issued in the name of J. A. Magoon, one of the defendants hereto; and contended that the defendants held such shares subject to a trust that upon Irene's death the same shall be assigned to the plaintiffs.

The bill thereupon contended that no legal adjudication had been made of said questions of law,—referring to the reserved questions upon which the Supreme Court had ruled as set forth above, for the following reasons, to-wit:

1.   No decree was made in any of such proceedings;

2.   In all such proceedings, the children and Irene were represented by the same counsel although their interests were conflicting;

3.   No court which was organized as required by the Constitution of the Republic of Hawaii had obtained appellate jurisdiction of any of the said reserved questions of law;

4.   The jurisdiction of the said Supreme Court concerning the construction of the said will,—if it ever existed, ended upon its determination that no trust was in existence concerning the said property;

5.   All matters of law arising and pending in the first case before Judge Cooper, were required by law to be decided by him and by no other court or judge, and the same, nothing having been decided by him, were not lawfully presented or decided by any other court or judge;

6.   There was no statutory or other authority to reserve questions of law in the first case for the opinion of the Supreme Court and such reserved questions of law did not lawfully come before such court, and so it had no jurisdiction thereof;

7.   Judge Whiting of the Supreme Court had no constitutional authority to reorganize the Supreme Court, two of the justices thereof being disqualified, by installing two members of the bar of the Supreme Court to sit in their places for the decision of such questions;

8.   After argument upon such reserved questions before such court, upon the withdrawal of one of such substituted justices,

before an opinion was reached by such court, a new court to hear argument and decide such questions could not be lawfully organized.

The bill prayed, among other things, for an order restraining the defendants from disposing of the shares held by them as aforesaid, and that they be decreed to assign the shares held by them to a trustee in trust during the life of said Irene, to pay the income thereof to those entitled thereto and at her death to assign all of the said shares to the plaintiffs; and for general relief.

The bill was demurred to on general and special grounds, one of the latter being to the effect that "It does not appear that any of the property or estate of the plaintiffs was conveyed to said corporation either by them [Irene and C. A. Brown] or by any person purporting to act in their behalf."

The court sustained the demurrers on the ground that the deed of conveyance referred to, which was made a part of the bill, did not convey or purport to convey the estate of the plaintiffs in the "said property,"—the estate of John Ii, deceased, supposing they had an estate therein.

The plaintiffs thereupon amended their bill by adding thereto averments of intention on the part of the grantors of the said deed of conveyance to convey to trustees for the organization of a corporation the fee simple of the lands devised by the will to the plaintiffs, and that the ownership in fee simple in such lands was claimed and exercised by the said corporation by virtue thereof; that the defendants claimed that the said proceedings and decision of the Supreme Court were conclusive upon the plaintiffs and forever barred them from setting up any title under the said will to the said lands, and that by reason of the said decision of the Supreme Court, they have been deprived of trustees as provided by the said will for the protection of their interests as remaindermen, and that unless the invalidity of said proceedings and decision, and also the plaintiffs' titles therein claimed, be declared by the court, a cloud

will rest upon their title, and their rights as such remainder-men may be subject to costly and difficult legislation. The fourth paragraph of the prayer was amended to read as follows; the additional words I have placed in italics: 4. For such other, further and appropriate relief, orders and decrees as the nature of the case may require, *and specifically, that a declara-tory decree be made declaring that the proceedings, decision and conveyances herein mentioned are invalid and of no effect as against the plaintiffs.*"

The bill as amended was demurred to on the same grounds as before and the demurrers were sustained,—the judge ruling that the new allegations did "not take the case out of the rules set out in the former decision unless the bill is now good as a bill *quia timet*," and decided that, it being apparent from the pleadings that the plaintiffs were out of possession of the land, and, moreover, had their remedy in the statutory action to quiet title, the demurrers must be sustained on this point. A decree was made dismissing the bill and giving costs to the de-fendants. This case will be referred to as the second case.

The plaintiffs appealed to the Supreme Court where the de-cree was affirmed and the case remanded to the circuit judge.

The contentions in the present case in relation to the first case as made by the briefs are similar to those raised in the second case, without including the fifth and eighth points of the latter, and with the additional point by counsel of the Es-tate to the effect that federal courts are precluded by their precedents and the rule established by the Supreme Court of the United States from reviewing the judgments of the highest tribunals of the several States of the American Union, upon questions of the construction and validity of municipal law, except where some federal question is involved. The applica-tion of this rule to the Territory of Hawaii was recognized by Judge Estee in *Hawaiian Tramways Co. v. Rapid Transit & L. Co.*, 1 U. S. Dist. Ct. Haw., 164, 177-178; by Judge Wood-ruff of this court in the *Atcherley habeas corpus* case, decided September 4th, 1909 (Ante p. 404), and by Judge Robertson

of this court in the case of *Y. Soga et al. v. Jarrett,* decided March 22nd, 1910 (Ante p. 502).

With this statement of the case, it becomes necessary to ascertain the extent to which this court is or may be limited in its freedom of consideration, by the litigation that has already taken place, referring to the well established rule that in the consideration of the constitution or laws of a State, federal courts follow the construction given by the highest court of the State. *Wilson v. North Carolina,* 169 U. S. 586, 592-593. It appears that two of the judges of the Supreme Court, being disqualified to sit at the hearing and consideration of the said reserved questions, the remaining judge, in supposed accordance with the Constitution of the Republic of Hawaii, art. 83, sec. 1, and section 56 of chapter 57 of the laws of 1892, requested and authorized two members of the bar of the Supreme Court to sit in the places of the disqualified judges at the trial of the said case. The court, so constituted, heard argument in the matter of the reserved questions and took the same under consideration, but, before reaching a conclusion thereon, one of such substituted judges resigned his position as such judge and withdrew from further connection with the case. Thereupon, on motion of counsel for the plaintiff, the same judge of the Supreme Court requested and authorized the remaining substituted judge and another member of the bar of the Supreme Court to sit with him in the determination of the said case. The court so constituted heard argument in the matter of the said reserved questions and thereupon filed its decision as hereinbefore set forth,—finding that a trust had been created in the property devised to Irene by the will of her father and that such trust had terminated upon her marriage and majority; and also that she had an estate in fee simple in the property devised to her by such will.

The plaintiffs in the second case contended, points seven and eight, that the said remaining judge of the Supreme Court had no constitutional right to request or authorize the said two persons to sit with him as justices of the Supreme Court in the

places of the two disqualified justices; and that after the court so constituted had heard argument in the case and taken the same under consideration, "a new court to rehear said argument and decide" the said case upon the withdrawal of one of such substituted judges without joining in an opinion thereon, "could not be and was not lawfully organized."

On appeal in this case, the Supreme Court, construing the applicable constitutional and statutory provision, ruled that "It is at least doubtful whether the Constitution (Const. 1894, art. 83, sec. 1) did not permit the places of two disqualified members of the court to be filled with substitutes at the same time. The statute clearly did in terms at least. C. L., sec. 1170. That has been the practice acquiesced in for years under the statute. The court was a *de facto* court and the decisions of a *de facto* court are not void and cannot be questioned collaterally." *Brown v. Brown,* 15 Haw. 312. This finding appears to beg the question whether or not the court so constituted was a court *de jure,* as it relies upon the rule of authority of *de facto* officers for its conclusion upholding the authority of the court. Under the rule, therefore, above set forth, it has no binding effect upon this court; and if it is contended that in such finding the Hawaiian court intimated its views of the meaning of the constitutional provision in question, it cannot be seriously argued that the federal courts are bound by such an intimation, which is no more than a suggestion and which is not relied on by the court making it. *Burgess v. Seligman,* 107 U. S. 20, 23-24; *Stanly County v. Coler,* 190 U. S. 437, 444-445.

We find two main contested points as to the validity of the decision in the first case. First, was the alleged court which made the decision in that case a legal court? and, second, if so, had it jurisdiction to authoritatively dispose of certain questions of law reserved by a circuit judge at chambers and certified up for its decision?

While this court holds itself free to review the ruling that the court in the first case was a *de facto* court, as held in the second case, it does not deem it to be necessary to take up this

point in view of its opinion on the second point reserved above, which point is stated by the following question: If the court in the first case was a qualified court, had it jurisdiction to authoritatively dispose of the questions of law or law and fact reserved and certified to it by a circuit judge in chambers?

The laws providing for the reservation of questions to the Supreme Court are as follows: "The Supreme Court shall have appellate jurisdiction to hear and determine all questions of law, or of mixed law and fact, which shall be properly brought before it * * * by reservation of any circuit court or judge." S. L. 1892, c. 57, sec. 51; Civ. L., sec. 1164; R. L., sec. 1628. Also "Whenever any question of law shall arise in any trial or other proceeding before a circuit court, the presiding judge may reserve the same for the consideration of the Supreme Court." S. L. 1892, c. 57, sec. 72; Civ. L., sec. 1436; R. L., sec. 1862.

The local Supreme Court made a definite construction of these enactments on this point in 1896 in the following words: "There is no authority, statutory or otherwise, for the reservation of questions to this court by a circuit judge sitting in equity at chambers." *Booth v. Baker,* 10 Haw. 543, 546. This is a construction of statutes by which this court is bound under the rule above recognized. The remaining question then on this point is the one of jurisdiction. The Supreme Court in the second case used the following language on this point: "Granting that the Supreme Court did not have jurisdiction of reserved questions in equity, still was the defect such as to make the decision absolutely void? The court had equity jurisdiction on appeals and it also had jurisdiction of reserved questions in law cases. The defect lies in the method of bringing the question up to this court. The questions were reserved by the circuit judge at chambers instead of in court. In our opinion it is not such a defect as renders the decision absolutely void." *Brown v. Brown,* supra, 312. I am not able to agree with this opinion. The case did not reach the Supreme Court by appeal, nor through any method, author-

ized by statute, of reserving questions to that court by a lower court, as conceded. It cannot be ascertained that it was before the court in a legal sense or in any way that gave jurisdiction. The county commissioners "have no authority to reserve questions of law for the determination of this court, and cannot, by so doing, vest in the court jurisdiction to hear and determine such questions." *County Commissioners of Hampshire,* 140 Mass. 181, 182; *Bearce v. Bowker,* 115 Mass. 129; *Terry v. Brightman,* 129 Mass. 535.

There being no jurisdiction the decision of the court was void, as fully so as if it had been made by any other three members of the bar. If a court "act without authority, its judgments and orders are regarded as nullities. They are not voidable, but simply void; and form no bar to a recovery sought, even prior to a reversal in opposition to them. They constitute no justification; and all persons concerned in executing such judgments or sentences, are considered, in law, as trespassers." *Elliott v. Piersol,* 26 U. S. 328, 340; *Williamson v. Berry,* 49 U. S. 508, 555; *Lewers & Cooke v. Redhouse,* 14 Haw. 290, 294. And if the second decision suggests, as it appears to do, that the question of jurisdiction may be, and has been, waived in this case (*Brown v. Brown,* supra), the answer is, jurisdiction of the subject matter cannot be conferred by consent or waiver. *Dudley v. Mayhew,* 3 N. Y. 9, 12; Cooley's Const. Lim. (7th ed.) 575-576.

A third point was also considered, i. e., whether the court in the first case had jurisdiction to construe the will after deciding that there was no longer any trust in existence; and while the court in the second case conceded that the court in the first case should have declined to construe the will, it held that this was an error that did not make the decision void, and that it "as well as other alleged defects above mentioned," was a matter that might be waived by the then plaintiff minors so as to preclude a collateral attack by them, citing *Brown v. Brown,* supra, 312, 313. It is true that minors may waive objection to errors apparent on the record that do not involve jurisdiction

of the suit. *Kingsbury v. Buckner,* 134 U. S. 650, 674. As this point, however, is one of the plaintiffs' contentions in the second case, it clearly has not been waived by them.

Counsel for the Children make the further contention that, inasmuch as no decree was entered in the first case, the decision therein, which is an answer to the said reserved questions, does not constitute a bar to the present proceedings. The court sustains this contention. "The confirmation has not reached the stage yet where it has become *res adjudicata* and can operate as an estoppel. There is as yet no final decree." *Bouldin v. Phelps,* 30 Fed. Rep. 547, 578; *Oklahoma v. McMaster,* 196 U. S. 529, 533; *Springer v. Brien,* 128 N. Y. 99. It is pertinent here to mention the significant circumstance that both the decisions in the first case and in *Booth v. Baker,* supra, which was also a case of reserved questions from a circuit judge in equity at chambers, record an expression against any binding effect of their action as a precedent. They obviously took up the consideration of such questions as a matter of assistance to the judge reserving them, not deeming that their findings would have any legal effect unless they should form the basis of a decree by such judge.

The contention is made by counsel of the Estate that as the decision in the second case approves the decision in the first case and declares it to be binding on the parties, a rule is made to be followed by the federal court. To meet this contention let us find out what that decision really decided, it being obvious that it made no pretension of passing upon the construction of the John Ii will or of adjudicating the title to the land in question. Judge Gear's decisions, taking them together, sustained the demurrers and decreed the dismissal of the bill on the grounds (1) That the allegations did not show a conveyance of the children's interests, (2) That the bill showed the plaintiffs to be out of possession, which circumstance made the bill bad as a bill *quia timet,* and (3) They had their statutory remedy at law in an action to quiet title, where it was immaterial whether they were in possession or not. On appeal to

the Supreme Court, the decree was affirmed on the first and third grounds and then the court took up the questions of the effect of the first decision and the conveyances as clouds on the alleged title of the children. Was not the issue then before the appellate court, whether the decree should be sustained on the grounds upon which it was made? The other questions raised by the demurrers and considered by the Supreme Court were not considered by the court below and formed no basis of its decree. They were these, i. e., (1) whether the court which made the decision in the first case was a qualified court? (2) whether such court if qualified had jurisdiction of the questions reserved to it by a circuit judge sitting in equity at chambers? and (3) whether it had jurisdiction to construe the will after deciding that the trust created by it had terminated? The court ruled on these questions as heretofore set forth. Do these rulings create a rule that this court must follow?

Where a demurrer is sustained for want of equity "the estoppel extends only to the precise point presented by the pleadings and decided by the ruling upon the demurrer." *Dennison v. Scharf,* 121 Fed. Rep. 313, 318; *Wiggins v. Railway,* 142 U. S. 396, 410.

On the question of the force of a judgment as an estoppel, " where a number of issues are presented the finding on any one of which will warrant the verdict and judgment, it is competent to show that the finding was upon one rather than on another of these different issues." *Washington, etc., Co. v. Sickles,* 65 U. S. 333, 345; *Russell v. Place,* 94 U. S. 606, 608; *De Sollar v. Hanscome,* 158 U. S. 216, 221.

A decree sustaining a demurrer is no bar to subsequent proceedings upon facts and questions of law not litigated or passed upon by such decree. *Detrick v. Sharrar,* 95 Pa. St. 521, 525-526. A decree sustaining a demurrer on the ground that the bill showed an adequate remedy at law, is no bar to new proceedings. *Detrick v. Sharrar,* supra, 525.

" If the first suit was dismissed for defect of pleadings, or parties, or a misconception of the form of proceeding, or the

want of jurisdiction, or was disposed of on any ground which did not go to the merits of the action, the judgment rendered will prove no bar to another suit." *Hughes v. United States,* 71 U. S. 232, 237; *Converse v. Davis,* 90 Tex. 462, 466.

The Supreme Court has "jurisdiction to hear and determine all questions of law or of mixed law and fact which shall be properly brought before it on exceptions, error or appeal." R. L., sec. 1628. The only questions "properly brought before" the Supreme Court in this matter were the reasons announced by Judge Gear as the bases of his decree and the decree itself. Where a decree "refers to the opinion of the trial judge in terms that make it clear that the object was to refer to it, to explain what was determined, and the reasons therefor, then such opinion becomes legitimately a part of the record, and must be looked to, to explain what was *in issue* and what was determined by the judgment or decree in question." *Legrand v. Rixey's Adm.,* 3 S. E. 864, 871. In harmony with this is the rule that the opinion of the court affirming such decree, is inadmissible to show that the question determined was different from that in the record. *Robinson v. New York, etc., Co.,* 18 N. Y. S. 728, 730.

With the showing made, I cannot find that the second case has affirmed the decision in the first case, especially as to its ruling that Irene had an estate in fee simple in the lands devised to her by her father.

The counsel for the Children further contend that they were not parties to the first case and so no jurisdiction was acquired over them. It appears that the first case which was brought by A. F. Judd for himself and as next friend on behalf of Irene, a married woman, and George and Francis, minors, was signed "A. F. Judd" with the name of counsel typewritten; and the amended bill in which Sanford B. Dole was joined with the said A. F. Judd, was signed "A. F. Judd, Sanford B. Dole," with the names of counsel typewritten as before. Under these circumstances this contention is supported both by precedent and good policy. *Chapman v. Publishing*

*Co.*, 128 Mass. 478, 479 ;*Eveland v. Stephenson*, 45 Mich. 394, 396; *Davis v. Davis*, 19 N. J. Eq. 181; *Nightingale v. Railway Co.*, 18 Fed. Cas. (No. 10,264) 239 ; Mitford & Tyler's Pl. & Pr. in Equity, 66, 145-146. The bill and the amended bill being signed by the alleged trustees without the signatures of counsel as to the Children and Irenè, were good as their bills only. Although it is true that jurisdiction in the subject matter of a suit cannot be conferred by consent or waiver, yet it would seem that jurisdiction of the person may be thus conferred. Has this defect been waived by the Children?

The object of the second case was to procure the reversal of the decision in the first case. In the second case the above point was not raised and as they had full opportunity of raising it, they may be considered as having waived it. They did, however, make the contention that in the first case they and their mother, Irene, were represented by the same counsel, which contention would appear to contest the jurisdiction of the courts in the first case over their persons, and is inconsistent with any theory of a waiver of such point. And in the present case the point has been urged with great earnestness, with the resulting proposition which cannot be denied, that they were not therefore represented at all or, at least, insufficiently upon the question of their title to their grandfather's estate. The court had decided that Irene had a fee simple estate in the land devised to her and her children by her father's will; and yet she and the children were represented in this case in which their conflicting interests were considered and disposed of, by the same next friends and the same counsel. It is inconceivable that an issue of title in the lands devised to these persons by the will of John Ii was contemplated by the men who brought and conducted the first case. It is obvious from a reading of the prayers in both the bill and the amended bill that no such question was intended to be submitted, and yet in stating the real issue, which was that the said Judd and Dole be "reinstated as executors and trustees of said will and estate," and

that the terms and provisions of said will and the duties and obligations imposed upon them be determined, the amended bill, referring to provisions for the Children and for the support of Irene, says, "It is important to obtain a construction of such provisions and the relative rights under said will of such minor children and the said Irene Haalou Ii Brown and the said Charles A. Brown in and to the said estate and to the income thereof." These words must have been misleading to the courts concerned in the first case, if indeed, the determination of the duties and obligations of the alleged trustees, and the "construction of  *  *  *  the relative rights under such will of such minor children and the said Irene Haalou Ii Brown and the said Charles A. Brown in and to the said estate and to the income thereof," did not require a construction of the will on the issues upon which such construction was made.   However this may be, it appears that the claims of the Children were considered and a decision rendered unfavorable to them, while they were represented, if at all, by the same counsel and next friends who represented their mother in whose favor the question of the title of the lands in question was decided.   It is clear that they have never had their day in court on that question.

Under this analysis it does not appear that the findings referred to of the Supreme Court are *res judicata* and a bar upon the grounds insisted on to the consideration of the questions involved, by this or any court.   And it still stands that if the decision in the first case was void, as found above, its affirmance, if it was affirmed in the second case, which is extremely doubtful, gave it no validity whatever.   *Chambers v. Hodges,* 23 Tex. 105, 111.

It appears from the precedents that the jurisdiction of a court whose proceedings are relied upon in support of rights claimed in another court, may be inquired into by that court. This freedom of action is in accordance with the duty of a court to dispose of every question which is relevant to the issue be-

fore it; a judgment by a court without jurisdiction being a nullity, it is vital that another court before which such judgment is cited should ascertain this fact.

" Neither orders nor decrees in chancery can be reviewed as a whole in a collateral way.   But it is an equally well-settled rule in jurisprudence, that the jurisdiction of any court exercising authority over a subject, may be inquired into in every other court, when the proceedings in the former are relied upon, and brought before the latter by a party claiming the benefit of such proceedings.   The rule prevails, whether the decree or judgment has been given in a court of admiralty, chancery, ecclesiastical court, or court of common law, or whether the point ruled has arisen under the laws of nations, the practice in chancery or the municipal laws of states."   *Williamson v. Berry,* 49 U. S. 508, 554-555; *Guaranty Trust Co. v. Green Cove Railroad,* 139 U. S. 137, 147; *Defiance Water Co. v. Defiance,* 191 U. S. 184, 194.

The court is therefore brought to the consideration of the claims to the fund in court for distribution under the provisions of the will of John Ii; and, although not bound by the findings in the first and second cases, yet the court holds that such findings with the reasons given therefor are entitled to its respectful and earnest consideration.   The decision in the first case quotes the following rule from *Fowler v. Duhme,* 42 N. E. 623, 631:   " The testator's intention to express a contingency to happen after his death, to affect the estate devised to the first taker, must appear distinctly from the clear and consistent language of the whole will."   This rule, which is generally accepted, may be more specifically stated as follows:   The rule of construction which applies to a devise with a devise over contingent on the death of the first devisee without issue, is, that where the devise is in terms that denote an intention that the latter shall take a fee upon the death of the testator, the contingency is the death of the devisee without issue during the life of the testator, but, surviving the testator, he takes an absolute estate in fee simple; but where the terms of the first devise are indefinite and are not inconsistent with a construction

38—D

by which a life interest only is conferred the devise is held to create a life interest only, there being, in that case, no obstacle in the way of giving full force to the contingent devise, and such conclusion in both cases being a reasonable construction of the intent of the testator from the words of the instrument. *Cooper v. Cooper,* 1 K. & J. 658: 69 Eng Reprint, 624; 2 Jarman on Wills (6th Am. ed.) 722, star page 1600, and 723, star page 1601; *Wright v. Charley,* 129 Ind. 257: 28 N. E. 706; *Fowler v. Duhme,* supra, 627. It is obvious that a devise to one and "in case of his death" to another, must confer an absolute title on the first devisee if he survives the testator, as death during the life of the testator must be meant, there being nothing more certain and less contingent than death some time. But where the devise over is contingent upon the death of the first devisee without issue or with issue, a contingency is created and the alternative rule set forth above applies.

The opinion in the first case cites the case of *Hemen v. Kamakaia,* 10 Haw. 547, in support of its finding that "by the provisions of this will the birth of a child has made the estate in the daughter Irene an indefeasible estate in fee simple." The will in the cited case has this provision, " If perchance any of my heirs mentioned above shall die without a child (this however does not apply to my wife) no part of his or her share * * * shall pass if she wills it away to another; but it shall descend to his or her brother or sisters * * * and their descendants and shall be divided equally according to their respective rights." It was decided that the title of one of these daughters to the land devised to her became absolute upon the birth of her child. We find the following clause in the Ii will: " If my daughter should die having borne children, then the property shall descend to her children, and if she should die without having had any children the property shall descend to her own mother." If the will contained the latter part of this clause and not the first part, the rule recognized in *Hemen v. Kamakaia* would obviously apply, but does not the intention so clearly expressed in the first part prevent its ap-

plication? The language leaves no room for doubt as to the testator's intention. The event of death after having borne children is a contingency which is not limited to the period before the testator's death. The uncontested allegations appear in the record that the said John Ii was about sixty-nine years old and Irene only a few months old when the will was executed. These are circumstances to be considered in construing this part of the will, if any construction is necessary, and makes it seem unlikely that he contemplated the possibility of the death of his daughter after having reached maturity and given birth to children and all in his own lifetime. The opinion declares in substance that the words, "if my daughter should die having borne children then the property shall descend to her children," mean that upon the birth of a child the estate vested in her in fee simple. I cannot agree with the contention that would take away from these words their obvious meaning,—words which are without vagueness or uncertainty. The rule in Shelly's case will not be applied when it defeats the clear intention of the testator. *Thurston v. Allen,* 8 Haw. 392, 400. Under the rule of construction given above it is the devise showing an intention to give a fee, which is held to convey a fee to the first taker even in spite of a contingent devise over. This is fully recognized by counsel for the Estate in their brief, and also that such devise to the first taker may convey a life estate instead of a fee, if that appears "distinctly from the clear and consistent language of the whole will" to be the testator's intention. *Fowler v. Duhme,* supra, 623; Brief, p. 11. Counsel for the Estate contend that in the John Ii will a fee was "plainly created in the first instance." Brief, p. 16. The preliminary words of the devise are, "all my property both real and personal shall descend to my heirs who are mentioned below as follows": Irene, the daughter, Maraea, the wife, and J. Kamoikehuehu, the brother, are mentioned as first, second and third hoolina or heirs, or devisees; Kamealani and Judd, to whom real estate was devised without limitations, were not described by any words denoting heirship.

It is significant that the word hooilina (heir) is used in connection with only the three devisees who were his statutory heirs, and not with the other two who had no claim on him by kinship. His former position as a judge of the Supreme Court had doubtless acquainted him with the Hawaiian statute of descent, and he may have deemed it a desirable thing to classify those of his devisees who were statutory heirs as such. The use of the word hooilina (heir) can have no other significance than this, in view of the fact that it is not used in reference to the other devisees, nor the significance intimated by counsel's brief, twelfth page, as tending to show that Ii intended his daughter to have the full benefit of his estate. The will gives intrinsic evidence of having been drafted by one who, although somewhat acquainted with the Hawaiian laws of descent, had little knowledge of the intricate rules which have grown up in common law countries in regard to the construction of wills. It contains no words expressive of an intention to create a fee in the first statement of the devises, but leaves the meaning to be gathered by the subsequent provisions. There are subsequent provisions in reference to the devises to Kamoikehuehu, Kamealani and Judd. The wife's devise of land is limited by the provision that she cannot devise it, and by the condition that if she should marry again, it would descend to the daughter. Are the words "if my daughter should die having borne children, then the property shall descend to her children," words of limitation, meaning the same as the words *to my daughter and her heirs,* as is assumed by the court in the first case? *Brown v. Brown,* 11 Haw. 47, 52. The general rule is that "the word children is a word of purchase and not equivalent to the word *heirs* in the absence of other words or circumstances showing it to have been used in that sense." 5 Am. & Eng. Ency. Law, 1092; *Buffar v. Bradford,* 2 Atk. 221, 222: 26 Eng. Reprint, 537; *Annable v. Patch,* 20 Mass. 360, 363; *Stokes v. Tilly,* 9 N. J. Eq. 130; *Tayloe v. Gould,* 10 Barb. 388. In the latter case the words of the devise were "to my beloved daughter * * * and such her child or children as shall at her decease be living

and shall have attained or shall thereafter attain the age of twenty-one years." The court said, "It seems to me very plain that the words of the will under consideration, tested even by the rigid rule as it stood before the adoption of the revised statutes, would be regarded as words of purchase and not words of limitation." *Reimer v. Reimer,* 44 Atl. 316: 192 Pa. St. 571, cited by counsel for the Estate, fully supports the same rule. The case of *In re Vilsack's Estate,* 57 Atl. (Pa.) 32, cited by counsel for the Estate, is not a case in point for that side but sustains the rule just referred to. The will gave certain property to his sons and daughters, "during their natural lives share and share alike and after the death of either of" them, "to their child or children (should they leave any children at their death) the share held by my sons and daughters at the time of his or her death." So far the devise conforms to the devise to Irene in the John Ii will, and the court said, "had he stopped here there could be no question that the word 'children' was used in its ordinary sense as a word of purchase, and that his sons and daughters only took a life estate." The court decided on other grounds not pertinent here, that the word "children" was necessarily used "in its comprehensive and extended sense, meaning issue or heirs of the body," which ruling gave the fee to the sons and daughters.

The case of *McCullough v. Johnetta Coal Co.,* 59 Atl. 984: 210 Pa. St. 22, cited by counsel for the Estate, is not in point, as the devise ran, after a provision for distribution in case of devisee's death without issue, "but should my son have heirs or issue then this land shall be his and his heirs." In the case before the court there is no devise to Irene and her heirs nor anything equivalent to it unless the expression "if my daughter shall die and she should have issue, then the estate shall descend to her children," is equivalent.

The case of *Parker v. Iasigi,* 138 Mass. 416, cited in support of the contention that "a devise in fee clearly manifested in the early clauses of a will is not to be cut down by later clauses," does not apply to the issue before the court, there

being no "devise in fee clearly manifested in the early" or any clause of the will under consideration, and the point in the cited case being that the later clauses referred to other matters. See *Noble's Estate,* 182 Pa. St. 188, 193.

In *Curry v. Patterson,* 183 Pa. St. 238: 38 Atl. 594, a devise of the income of certain real estate during the "natural life time" of the devisee, subject to certain charges, the same to "descend to his heirs" at his death, was decided to give a fee simple title under the rule in Shelly's case, the word "heirs" being given its usual technical meaning. "Not only as to the persons to take but as to the mode of taking the words are strictly technical"; and referring to these technical words the decision uses this strong language, " The rule in Shelly's case is applicable without regard to the actual intent of the testator." This view of the paramount force of the rule held by a court of the State of Pennsylvania, a jurisdiction where the rule in Shelly's case is perhaps more strongly entrenched than anywhere else, can hardly be followed by this court. It was distinctly repudiated by the Hawaiian Supreme Court in February, 1892, in the case of *Thurston v. Allen,* 8 Haw. 392, 400; and although "the common law of England, as ascertained by English and American decisions," subject to some local limitations, was enacted as the common law of the Hawaiian Islands in the latter part of the same year, the extreme position of the Pennsylvania court can hardly be regarded as in force here in view of the considerable variance of both English and American courts therefrom, even though the enactment referred to may not be repealed by the Revised Laws.

" In the absence of some absolute and controlling rule of law to the contrary, the intentions of a testator, as deduced from the language of the will, construed in the light of circumstances surrounding him at the date of its execution, always control as to the disposition of the estate." *Adams v. Cowen,* 177 U. S. 471, 475; *Smith v. Bell,* 31 U. S. 44; *Reek's Appeal,* 78 Pa. St. 432, 435; *Wright's Appeal,* 89 Id. 67.

The rule in Shelly's case cannot be regarded by this court as such an absolute and controlling rule.

The trend of the cases submitted on this point by counsel for the Estate, is according to the accepted rule already referred to with approval, which does not recognize a second disposition of property which has already, in the same instrument, been given in fee, if real estate, or absolutely, if personal estate. The counsel for the Estate insist that the preliminary devise to Irene in her father's will, plainly creates a fee. Let us refer to the will, briefly, and omitting the parts not pertinent to this question, we find the following, according to a translation which is accepted by all the parties, except as to a disputed sentence hereinafter referred to: " My property both real and personal shall descend to my heirs who are mentioned below as follows: First. Irene Haalou Ii, my own daughter is the first heir as follows: * * * [description of lands] and one-half of all my personal property. Second. My wife Maraea Ii is my second heir * * * [description of lands] and one-half of all my personal property; and in case my wife marries again this land shall descend to my daughter, she cannot bequeath it to any one. Third. My brother J. Kamoikehuehu is the third heir * * * [description of lands] those are the lands I bequeath to him. Fourth. My interest in the land of Naaihelu, my deceased younger brother is for his widow Kamealani. Fifth. My land * * * [description of land] is for A. F. Judd, and that is his land that I bequeath to him. * * * I do hereby appoint J. Kamoikehuehu, A. F. Judd, they both to be the executors and guardians of the person and property of my daughter the first devisee mentioned in this will. * * * They two alone shall have the sole care of it [income of her lands] until she becomes of age or has children of her own; they shall be the executors during the lifetime of my daughter and her children in accordance with my wishes as expressed in this will, and they shall receive compensation the same as provided by law * * * the first fruits received from the lands of my daughter, that is, the money received, there shall be taken therefrom

ten cents from each dollar which is set apart as an offering to God's Kingdom the same as I have done, and my executors are to carry out this request of mine. And further, if my daughter should die having borne children, then the property shall descend to her children and if she should die without having had any children the property shall descend to her own mother, and if she should be dead then the property shall descend to my brother J. Kamoikehuehu."

The word "hooilina," which is translated "heir" in the first, second and third bequests, is translated "devisee" in the clause appointing the executors and guardians of the daughter who is referred to as the "first devisee mentioned in this will," thus making the words *heir* and *devisee,* in the translation, synonymous. Either translation is correct except as the context may require one rather than the other. It does not therefore appear from a reference to the will that the word hooilina has any definite meaning as to the character of the devise, it being probably, as already suggested, merely a classification of the statutory heirs of the testator. If this conclusion is correct, we have to look to other parts of the will for words expressing the intent of the testator; where there are none the devise is absolute, or a fee simple, if of the real estate. *Hemen v. Kamakaia,* 10 Haw. 547; *King v. King,* 215 Ill. 100, 110. There are no further expressions relating to the devises to J. Kamoikehuehu, Kamealani and A. F. Judd, and it is not doubted that they take in fee simple. The devise of land to the wife is cut down by additional words to an estate less than a fee. The devise to the daughter is followed by the additional words quoted above; and if we take them in their common and untechnical meaning, as I submit we must take them, they express an intention that the daughter should have a life estate, with remainder to her children or, failing children, to his wife or to his brother. The case of *King v. King,* supra, is identical with this as to this point, the words of the will being, after the devise without words of inheritance, "in case of the death of daughter and she left one or more children, then the property goes to them when of age."

The court decided that this gave her a life estate, she having had children. The foregoing conclusion is consistent with the provision in the will devoting ten per cent of the income of the lands "of my daughter,"—"the first fruits," "as an offering to God's Kingdom the same as I have done"; a provision which, it can hardly be doubted, contemplated a continuing administration of the property by the executors and guardians.

There is a clause in the will of doubtful meaning, which if given a certain interpretation that it seems capable of, tends to strengthen the above ruling. This is in the following quotation: "they two alone shall have the sole care of it [income from lands] until she becomes of age or has children of her own; they shall be executors during the lifetime of my daughter and her children in accordance with my wishes as expressed in this will." The words "or has children of her own," are the translation of the Hawaiian words *"a hanau paha kana mau keiki."* The translation given makes the next sentence repugnant to and inconsistent with the sentence preceding such words, and there is no way out of the difficulty if the given translation is retained. A number of experts have been consulted by the court and by counsel and their several translations are before the court. All but two of these give substantially the same rendering as that given in the agreed translation on file; but one of them, who must be recognized as an authority, Rev. H. Parker, has given the following rendering: *"and in the event of her giving birth to children,"* and Mr. Hopkins, a Hawaiian, has given a similar rendering. Upon the examination of a majority of these experts the majority of those testifying conceded that the words were capable of the translations made by Mr. Parker and Mr. Hopkins. The clause with the new translation reads as follows: "they two alone shall have the sole care of it [income from lands] until she becomes of age, *and in the event of her giving birth to children,* they shall be the executors during the lifetime of my daughter and to her children following, in accordance with my wish as expressed in this instrument." With this rendering the

discrepancy is removed and the parts of the clause are in harmony with each other and the whole clause is in harmony with the obvious and untechnical meaning of the final provision of the will. In accordance with the accepted policy of the construction of doubtful passages, a translation that removes a discrepancy, if it is reasonably within the bounds of grammatical and etymological interpretation, is to be preferred to one that fails to do so. I feel that I am justified in accepting the new translation of the words in question on this ground, and it being admitted by several of the other experts that the words are capable of such rendering.

Although important deals in real estate have taken place in relation to the lands devised to Irene and the Children, in accordance with the findings of the Supreme Court in the first case, yet the rule of *stare decisis* does not properly apply, there being no construction of statutes or findings fixing methods in relation to business transactions. No rule of property has been established. "A rule of property is a settled legal principle governing the ownership and devolution of property." *Yazoo v. Adams,* 32 S. 937, 946. Simply a will has been construed in one case and it does not appear from an examination of other adjudged cases by the same court, that such construction is or has become a settled rule of property in the Hawaiian Islands.

Counsel for the Estate make the point that a long submission by the minors to the decision in the first case would estop them from contesting these proceedings, even if such decision was void in the first case. Let us see what their submission, if any, has amounted to. When the first case was brought in April, 1894, George was six and one-half years and Francis six months old. The decision, which consisted of answers to the reserved questions filed by Judge Perry, was made in May, 1897. As already shown there was no decree filed in this case, and the deed of July 2, 1897, made under its authority was not recorded for four years and four months afterwards, and the second case was brought within fifteen months after such registration, in January, 1903, George then being about fifteen

and Francis about ten years old.   The decree dismissing this case on demurrer was affirmed on appeal in November, 1903. On September 21st, 1909, notice in the case of *United States v. John Ii Estate, Limited, et al.,* was given to counsel of George and Francis,—the former having reached his majority about two years before and the latter being still a minor, and to the other defendants in the said case, that ten thousand dollars was on deposit in this court in favor of such of the defendants as should show that they were entitled thereto.   Claims were therefore filed by George and the counsel of Francis, each for an undivided one-third of the said fund, subject to a life interest therein of Irene Ii Holloway or the said John Ii Estate, Limited, as the assignee of such life interest; and these claims have been persistently pushed in this court.

I do not find any conduct in these circumstances that estops these children from contesting the decision in the first case. The second case and the events leading up to it show that there was no submission up to that time.   They were minors then and long afterwards and by analogy of the statutes of limitation and by precedent the rule of estoppel does not run strictly against minors, if at all.   *Brown v. McCune,* 5 Sandford 224; *M'Coon v. Smith,* 3 Hill, 147; *Mahoney v. Van Winkle,* 21 Cal. 552, 581-582; *Lackman v. Wood,* 25 Cal. 147, 153.   The decree in the second case with the expression of opinion by the Supreme Court made their non-action thereafter sufficiently excusable, until the opportunity occurred in connection with the case of the *United States v. John Ii Estate, Limited, et al.,* in this court, for renewing the fight which had previously been conducted by next friends.   The promptitude with which the contest was renewed and the enterprise with which it has been carried on, would seem inconsistent with any idea of submission or of giving up.

The further point is made that George by accepting the share of the dividends of the John Ii Estate, Limited, coming to him has ratified the deed from Irene and C. Å. Brown to the Estate and is thereby estopped from claiming any of this fund.   No

authorities are offered in support of this contention. The law of estoppel *in pais* has changed since the times of the earlier common law. It could only apply to this point of the case if there had been some act or conduct on the part of George which has induced a change of position of those who allege an estoppel or their privies in accordance with his real or apparent intention. Bigelow on Estoppel, 454; 11 Am. & Eng. Ency. Law, 387. Nothing of the kind exists in the record. When the deed was executed in 1897, George was a minor about ten years old. This deed appears to have been in the nature of a compromise between Irene and C. A. Brown, in which the Children, under the status of the Estate as it existed under the first and second decisions, may be considered to have been generously treated. But George had no part in it and there is no element of estoppel in the fact of his receiving the gratuitous dividends that were allowed him by his parents. There is nothing in the second ground of estoppel offered,—that because his right to the possession of the Estate, "according to his own contention, would be postponed until after Irene's death, it becomes more apparent that he is estopped to dispute the deed." 1 Brief 2.

An important consideration now has to be taken up and that is, how will transactions entered into under the rulings of the first and second cases be affected by a reversal? This subject must be considered in connection with the interests of the Children which are involved in the decision of this case. If this court is correct in finding that by the will of their grandfather they are entitled to two-thirds of the fund in court, subject to their mother's life interest therein, then they are also entitled to two-thirds of the lands of his estate, subject to such life interest. They have repudiated the transaction by which they would receive about one-third of the Estate in present enjoyment, in lieu thereof. There would be an obvious injustice to them in compelling them to accept this arrangement and forego the estate that is due them upon a certain contingency. On the other hand it is suggested that important dispositions of the Estate have been made by those in control of it, and within

their apparent powers, under which rights have accrued to the Estate and their lessees. No testimony has been offered as to the extent and character of such dispositions or of the present value of the landed property devised to Irene and her children; it is, however, agreed by counsel that the court may assume this to be over half a million dollars. Under these circumstances, with such large interests in the Children, subject to the contingency named, and with their mother, Irene, apparently in the prime of life, the court does not feel that there is sufficient ground to justify any hesitation toward awarding the Children a decree recognizing their full rights under their grandfather's will.

" Where a question involving important private and public rights has been only once passed upon, and cannot be said to have been acquiesced in, it is the duty of the court to reexamine such question judicially when properly called upon, or if the decision is clearly incorrect and no injurious results will be likely to flow from a reversal, and especially if it is injurious and unjust in its operation, it is the imperative duty of the court to reverse it." 1 Herman on Estoppel, 123, sec. 117; *Linn v. Minor,* 4 Nev. 462.

It is admitted by all parties that Irene has had only three children,—George, Francis and Bernice Ii, and that the latter died in infancy. By the Hawaiian law of descent of property, Irene and C. A. Brown, the parents of Bernice Ii, are her heirs.

A decree will be entered requiring the said fund of ten thousand dollars to be paid to a qualified trustee satisfactory to this court, who shall be required to invest such fund and pay the income thereof, subject to proper charges, to the Estate during the lifetime of Irene, and at her death to pay one-third of the principal and accrued increment to George or his representatives, one-third to Francis or his representatives, and one-sixth to the representatives of the said Irene and one-sixth to the said C. A. Brown or his representatives, with the contingent provision that if any other children should be hereafter born to the said Irene, such distribution to be made according

to the interest of all her children and their representatives under the rule set forth in the foregoing decision.

---

*On Appeal, pending in Circuit Court of Appeals, Ninth Circuit.*