WINFIELD H. RICARDO, SUBSTITUTED ADMINISTRATOR OF THE ESTATE OF JOSEPH M. H. RENNER, DECEASED, ANNE M. CONKLIN, REPRESENTATIVE OF THE ESTATES OF CARROLL J. (ALSO KNOWN AS HAROLD J.) RENNER, DECEASED, AND JOHN FREDERICK RENNER, DECEASED, PROSECUTORS, v. WILLIAM D. KELLY, STATE TAX COMMISSIONER, DEFENDANT.

Submitted January 15, 1946—Decided September 17, 1946.

Before Justices DONGES, HEHER and COLIE.

For the prosecutors, *Irving Dincin*.

For the defendant, *Walter D. Van Riper*, Attorney-General (*William A. Moore*, of counsel).

The opinion of the court was delivered by

HEHER, J. The issue here is one of testamentary construction. The inquiry is whether the devise made by the will of Mary G. Bakman, deceased, to her nephew, Joseph M. H. Renner, created a vested estate in remainder in the lands, subject to divestiture upon certain contingencies, neither of which happened, and the subsequent transfers of the interest occasioned by the devolution of title under the Descent Act are subject to the inheritance taxes levied by the defendant Tax Commissioner, or whether the deaths of Renner and his brother, John Frederick Renner, during the lifetime of the life tenant served to effect a devolution of the entire interest in the lands to Anne M. Conklin and June Renner, children

of John Frederick Renner, under the will rather than the statute of descent, and thus a transfer exempt from taxation by force of chapters 247, 248 and 249 of the Laws of 1927, which repealed the acts of 1892, 1893 and 1894, under which a transfer inheritance tax would have been leviable on the transfer of property of the testatrix, which repealers were saved from repeal by *R. S.* 54:33–4. Vice-Ordinary Jayne resolved the question in favor of the first-stated theory; and we concur in that view and also in his reasoning, and should be content to rest the affirmance upon his opinion were it not for prosecutors' earnest insistence that gifts over to John Frederick's children arose by necessary implication from the will taken as a whole.

Under the will, the estate in remainder was limited over, by way of executory devise, upon the occurrence of either of two conditions: (1) "In case that at the time of my sisters (*sic*) death either one of the two boys John Frederick Renner or Joseph M. H. Renner shall have died leaving lawful issue, then it is my will that such child or children shall take his or her parents (*sic*) share;" and (2) "In case both boys die without leaving lawful issue before the death of my sister Annie M. Renner, then I give devise and bequeath the above land and premises to the persons who by the law of descent of New Jersey would be the heirs at law of my sister Annie M. Renner, the same as if she has (*sic*) died intestate."

The testatrix died on August 3d, 1908. The life tenant died on April 10th, 1935, survived by her two grandchildren, Anne M. Conklin and June Renner, as her heirs-at-law and next of kin. Their father, John Frederick Renner, died on August 17th, 1930. Joseph M. H. Renner also predeceased the life tenant. He died on July 12th, 1927. His son and only child, Carroll, died on October 16th, 1927.

The argument is that the terms of the particular provision of the will are unclear and ambiguous, but that the language considered as a whole reveals a testamentary design that the title to the lands "should not vest in any person not alive at the time of the death" of the life tenant, and that the testatrix' failure to foresee "the actual happenings should not militate against her unwritten but discernible intentions."

Then, again, it is said that Joseph and John Frederick were seized of vested estates in remainder, divestible by their death in the lifetime of the life tenant, and that their children's respective interests in the remainder were in the nature of an executory devise which became vested upon the parent's death in the lifetime of the life tenant, "and their surviving the life tenant," and therefore title to the lands devolved upon Anne M. Conklin and June Renner by operation of the will and not through the intermediate stages of intestate succession found by the learned Vice-Ordinary. In a word, it is urged that Carroll J. Renner's interest in the lands was a contingent remainder in the nature of an executory devise which could not vest until the death of the life tenant and, since he predeceased the life tenant, he held no interest which passed to his uncle, John Frederick, by intestate succession; that it was the testatrix' "evident intention" that in the event Joseph and John Frederick both predeceased their mother, one only leaving lawful issue, such issue should take the entire estate, and that, at all events, the one-half interest devised to Joseph became vested in Anne M. Conklin and June Renner, as the only heirs-at-law of the life tenant, under the second condition of the provision of the will under review.

The judicial interpretative function is to find the meaning of the testator's expression; and if the testamentary purpose is revealed by terms that are clear and unequivocal, viewed in the light of the surrounding circumstances, there is no room for construction in its general connotation. *In re Fisler,* 133 *N. J. Eq.* 421. The spirit prevails over the letter of the testament. All principles and rules in aid of interpretation yield to the intention exposed by the context. The words are to be given their primary and natural significance unless the context makes it clear that they were employed in a different sense. The *prima facie* meaning of the terms cannot be rejected in favor of a larger construction without an explicit indication of such a purpose. *National State Bank of Newark* v. *Stewart,* 135 *Id.* 603. Conjecture and speculation as to the testamentary intention are inadmissible. The Statute of Wills (*R. S.* 3:2-3) directs that, except as to nuncupative wills, the testamentary design shall be in writing and authen-

ticated as therein prescribed; and thus the testator's intention, to be enforceable, must be found in the words of the will, considered as a whole in relation to the attendant circumstances. The aim of construction is not to find the unexpressed intention of the testator, but that expressed in the language of the will. The judicial function is not to redraft or revise the will, but only to construe the will that the testator has made. *German Pioneer Verein* v. *Meyer, 70 Id.* 192; *McGill* v. *Trust Company of New Jersey,* 94 *Id.* 657; *affirmed,* 96 *Id.* 331; *Vide Maxwell* v. *Maxwell,* 122 *Id.* 247; *First National Bank of Toms River* v. *Levy,* 123 *Id.* 21; *March* v. *Norristown Penn Trust Co.,* 123 *Id.* 282; *Summit Trust Co.* v. *McAuley Water Street Mission,* 125 *Id.* 505. We determine what was meant by what was said; the declaration is the token of intention. While the nature and *quantum* of the estate or interest created by the devise usually depends upon the testator's intention, it is ordinarily to be presumed that the testator intended the consequences which the law attaches to what he did.

In fine, the judicial authority is not at liberty to rewrite the will; and there would be such revision if the courts undertook to make provision for an unforeseen contingency in accordance with what it conceives the testator would have done if the contingency had been foreseen. The presumption against partial intestacy, while strongly favored, does not prevail unless the testamentary design of complete testacy reasonably appears. Where there is not a complete disposition of the testator's property, or through lack of foresight there is no provision for the contingency which has actually happened, the courts cannot supply the omission under the guise of construction. And it does not matter that the failure to provide for the contingency which occurred was purely inadvertent rather than intentional. The judicial authority can not insert the provision which it apprehends the testator would have made if that precise situation had been in his view, for that would constitute a re-making of the will. The terms employed to express the testamentary disposition are to be given a reasonable construction comporting with their primary and natural signification, as modified by the context

and the surrounding circumstances. The words cannot be distorted or enlarged to effectuate a wholly unexpressed intention. The language may be changed or moulded to fulfill an intent clearly and indubitably revealed by the context, but not to give effect to some supposed unexpressed design not otherwise appearing or to do that which the testator did not have in view at all. *McDonald* v. *Clermont,* 107 *N. J. Eq.* 585.

Upon the testatrix' death, Joseph and John Frederick became seized of a vested estate in remainder, subject to divestment upon the happening of either of the stated contingencies. It was an absolute devise in terms of inheritance defeasible upon condition subsequent; and thus it meets the test of a vested remainder, *i. e.,* a present fixed right to future enjoyment of the subject-matter of the gift. *Kahn* v. *Rockhill,* 132 *N. J. Eq.* 188; *affirmed,* 133 *Id.* 300. A testamentary gift otherwise absolute and vested is not rendered contingent by its liability to defeasance upon the subsequent happening of a contingency, such as a condition subsequent or a gift over on the death of the devisee before the arrival of the time of possession and enjoyment. *Hull* v. *Eddy,* 14 *N. J. L.* 169; *Neilson* v. *Bishop,* 45 *N. J. Eq.* 473; *Wilson* v. *Wilson,* 46 *Id.* 321; *Bonnell's Executors* v. *Bonnell,* 47 *Id.* 540; *Brooks* v. *Kip,* 54 *Id.* 462; *Boggs* v. *Boggs,* 69 *Id.* 497; *Dilts* v. *Clayhaunce,* 70 *Id.* 10; *Security Trust Co.* v. *Lovett,* 78 *Id.* 445; *Fidelity Union Trust Co.* v. *Dignan,* 105 *Id.* 750. The law favors the early vesting of testamentary gifts; and, in the absence of an evident intention *contra,* it regards the gift as vested rather than contingent. *In re Buzby,* 94 *Id.* 151. And conditions subsequent are not favored by the law, and are therefore strictly construed. There is no defeasance unless the condition is fully and precisely fulfilled. Literal strictness is the standard of interpretation of conditions which tend to defeat vested estates. Such was the rule applied in the case of *Redmond* v. *Gummere,* 94 *Id.* 216. There, it was held that where "the divesting is to occur only in favor of children of a remainderman predeceasing the distribution period, there is no divesting in the case of a remainderman dying without children, and in such case the vested share or interest passes to the personal representative of the one so dying." See, also,

*Burroughs* v. *Jamieson*, 62 *Id.* 651; *Neilson* v. *Bishop, supra; Fidelity Union Trust Co.* v. *Guaranty Trust Company of New York,* 135 *N. J. Eq.* 222.

The testatrix seemingly did not contemplate the deaths of one of the vested remaindermen and his only child during the life tenancy; and thus the first conditional limitation is not applicable, for there was no substituted devisee *in esse* when the life estate terminated. *Vide Neilson* v. *Bishop, supra; Michael* v. *Minchin,* 90 *N. J. L.* 603. And the second conditional limitation was not met, for neither of the vested remaindermen died without issue, although both predeceased the life tenant, and the children of one survived the life tenant, and they concededly took their father's share in substitution. There was no provision for a divestiture of the vested estate in remainder where both remaindermen predeceased the life tenant, one leaving children who survived the life tenant and the other leaving a child who did not. It may well be that this omission was purposeful. We do not know. But be that as it may, the courts cannot supply a defeasance clause omitted deliberately or inadvertently through lack of foresight or contemplation. The argument of prosecutors proceeds on the contrary hypothesis; and so it falls.

The decree of the Prerogative Court is accordingly affirmed, with costs.