CHRIST'S HOME, complainant-appellant,

*v.*

WILLIAM MATTSON, executor under the last will and testament of Harriet Z. English, deceased, et al., defendants-respondents, and MARTHA EASTLACK et al., defendants-appellants.

[Submitted May term, 1947. Decided September 25th, 1947.]

Mr. *Wilfred B. Wolcott,* for the complainant-appellant, Christ's Home.

Mr. *M. LeRoy Cobbin,* for the defendant-respondent William Mattson, executor under the last will and testament of Harriet Z. English, deceased.

Mr. *Francis J. Smith,* for the defendants-respondents and defendants-appellants.

The opinion of the court was delivered by

EASTWOOD, J.

This is an appeal from a decree of the Court of Chancery involving the construction of the last will and testament of Harriet Z. English, deceased. Christ's Home, complainant-appellant, appeals from that portion of the decree wherein the last paragraph of decedent's will reading "what money there is left to go *Crhist* Home, Warminster Bucks Co, Pa," is construed to mean cash money in hand, money in bank subject to check or on time accounts, and not to include building and loan association stock or real property. Defendants Mar-

tha Eastlack, Jessie McEwen, Harry S. Risler, W. Donald Risler, Harry Risler, Marguerite Johnson Gordon, and Albert Gordon, guardian *ad litem* of Marie Gordon, a minor, appeal from that portion of the decree allowing a counsel fee of $250 and costs to the solicitor for the defendant, William Mattson, executor of the last will and testament of Harriet Z. English, deceased, and denying counsel fees or costs to the other counsel.

The will before us is a curious document and it is admittedly full of errors. It was prepared by one unskilled in the law and, quite likely, untutored and illiterate. The resulting litigation is only one more example of a long series of similar events arising from an attempt of one having no legal training or ability to prepare what is concededly one of the most solemn and important documents in human experience. We proceed to a consideration of the arguments advanced by the respective parties.

The nearest of kin of the testatrix, and the natural objects of her bounty when she executed the will, were a sister, Martha Eastlack, a sister, Ellen Butcher, and a foster-daughter, Marguerite Johnson (named in the will Marete Johnson). Testatrix apparently intended to bequeath the sum of $100 to each of them, and although the bequests are not accurately so designated, it has been stipulated by counsel that such was testatrix' intention.

Decedent also bequeathed, as counsel have stipulated, the sum of $100 each to Marie Johnson, Albert Johnson and the Wesleyan Methodist Church of Paulsboro, New Jersey, and the sum of $25 to Silvia Mattson (named in the will Savila Mattson).

Her furniture, two best rugs and canned goods were bequeathed to the Brotherhood Mission.

The last paragraph of the will provides: "What money there is left to go *Crhist* Home. Warminster Bucks Co, Pa."

Ellen Butcher, a sister of the testatrix, died before the institution of suit, leaving two daughters, Harriet Wortman and Jessie McEwen, who are defendants in this suit. Other defendants are Martha Eastlack, a sister, Harry S. Risler, a nephew, being the son of Anna Risler, a deceased sister of

testatrix, and W. Donald Risler and Harry Risler, grand-nephews, being the children of Charles Risler, the deceased son of Anna Risler.

The will was dated June 7th, 1945, and the testatrix died on August 2d, 1945. There was no appreciable increase in her bank account between the date of her will and her death. She owned two parcels of real estate, building and loan association stock valued at $565.15, and had cash in bank in the sum of $3,814.27. Her furniture and canned goods were appraised at $35.

It is urged by appellant, Christ's Home, that the decree appealed from was erroneous for the reasons that (1) the court should have construed the words "What money there is left" to mean whatever property there is left, including not only cash on hand or in bank, but also the building and loan association stock and real property owned by the testatrix at the time of her death, and (2) the court should not have allowed any counsel fee and costs to be paid out of the personal estate of the decedent, as the only controversy was with reference to testatrix' real property and further, that the counsel fee of $250 as allowed, was excessive.

We have carefully considered the arguments of counsel and the authorities advanced by the parties in support of their respective contentions, and conclude that the decree appealed from is proper. It is well settled by the greater weight of respectable authority that "money" means money and money only unless there is in the context of the will something to indicate that the testator intended a more extended meaning. Confining our attention to the specific context of the will before us, we are unable to ascertain therefrom that the word "money" appearing in the paragraph "What money there is left to go *Crhist* Home, Warminster Bucks Co, Pa," was intended by the testatrix to mean anything other than "money," as it is commonly and universally understood to mean cash in hand or on deposit to the credit of decedent. It has been said repeatedly, the court's main concern is not so much what the testator meant to say as it is to determine what he meant by what he did say. We cannot speculate as to the testator's intention; we must ascertain that intention from the four

corners of the will. *March* v. *Norristown Penn Trust Co.,* *123 N. J. Eq. 282; 197 Atl. Rep. 276; New Jersey Title Guarantee, &c., Co.* v. *Dailey, 123 N. J. Eq. 205.* It is regrettable, but true, that some confusion exists as to how far the courts shall go to ascertain the testator's intent. Certain jurisdictions have been, in our opinion, over-liberal in their zeal to ascertain the precise state of the testator's intention and have thus been led into the realm of conjecture and speculation. We hold that the more salutary and reliable rule is that which limits the court's determination of intention to the express words that were used by the testator. In New Jersey it is a rule of primary and controlling importance that the intent must be found in the words that were used and it is not permissible for the court to speculate or guess at the.intent of the testator, except so far as it is to be spelled out of the actual language used in the light of relationships and surrounding circumstances. The Supreme Court, speaking through Mr. Justice Heher, in *Ricardo* v. *Kelly, State Tax Commissioner, 134 N. J. Law 540; 48 Atl. Rep. (2d) 897,* said that:

"The judicial interpretative function is to find the meaning of the testator's expression; and, if the testamentary purpose is revealed by terms that are clear and unequivocable, viewed in the light of the surrounding circumstances, there is no room for construction in its general connotation. *In re Fisler's Estate, 135 N. J. Eq. 421; 30 Atl. Rep. (2d) 894.* The spirit prevails over the letter of the testament. All principles and rules in aid of interpretation yield to the intention exposed by the context. The words are to be given their primary and natural significance unless the context makes it clear that they were employed in a different sense. The *prima facie* meaning of the terms cannot be rejected in favor of a larger construction without an explicit indication of such a purpose. *National State Bank of Newark* v. *Stewart, 135 N. J. Eq. 603; 39 Atl. Rep. (2d) 435.* Conjecture and speculation as to the testamentary intention are inadmissible. The Statute of Wills (*R. S. 3:2–3; N. J. S. A.*) directs that, except as to nuncupative wills, the testamentary design shall be in writing and authenticated as therein prescribed; and

thus the testator's intention, to be enforceable, must be found in the words of the will, considered as a whole in relation to the attendant circumstances. The aim of construction is not to find the unexpressed intention of the testator, but that expressed in the language of the will. The judicial function is not to redraft or revise the will, but only to construe the will that the testator has made. *German Pioneer Verein* v. *Meyer, 70 N. J. Eq. 192; 63 Atl. Rep. 835; McGill* v. *Trust Company of New Jersey, 94 N. J. Eq. 657; 121 Atl. Rep. 760;* affirmed, *96 N. J. Eq. 331; 125 Atl. Rep. 108; Vide, Maxwell* v. *Maxwell, 122 N. J. Eq. 247; 193 Atl. Rep. 719; First National Bank of Toms River* v. *Levy, 123 N. J. Eq. 21; 195 Atl. Rep. 820; March* v. *Norristown Pennsylvania Trust Co., 123 N. J. Eq. 282; 197 Atl. Rep. 276; Summit Trust Co.* v. *McAuley Water Street Mission, 125 N. J. Eq. 505; 6 Atl. Rep. (2d) 406.* * * * The words cannot be distorted or enlarged to effectuate a wholly unexpressed intention. The language may be changed or moulded to fulfill an intent clearly and indoubitably revealed by the context, but not to give effect to some supposed unexpressed design not otherwise appearing or to do that which the testator did not have in view at all. *McDonald* v. *Clermont, 107 N. J. Eq. 585; 153 Atl. Rep. 601."*

Undoubtedly, the word "money" is a flexible term, having restricted or weighty significance dependent upon the context of the will and the surrounding circumstances. It seems to be the more firmly settled rule that money will not be deemed to include real estate unless the intention so to use it is clearly manifest on the face of the will and put beyond all reasonable doubt. See *93 A. L. R. 514, et seq.*

We recently had occasion to construe a will in the case of *Hudson Trust Co.* v. *DeMalignon, 140 N. J. Eq. 167; 53 Atl. Rep. (2d) 337.* We said there "While the decedent's will was not as carefully drawn as it might have been, nevertheless 'the plain intent of the testator as disclosed by the language of his will, unless contrary to law, must govern.'" The rule expressed in *Hudson Trust Co.* v. *DeMalignon* is particularly apt in the case at bar. Here, too, the will was carelessly and inexpertly drawn. Our review of the express

provisions of the will and the circumstances surrounding the testatrix at the time of making said will leads us to the conclusion that the testatrix did not intend to alter or change the common and accepted meaning of the word "money" as used in her will, and this being so, this court will not give the words an interpretation different than the common and accepted meaning. We are bound to give effect thereto according to plain grammatical sense and common usage and meaning. The word "money" as used in the provisions of the will under consideration cannot, therefore, be construed to include decedent's real estate and personal property other than cash, but is limited to the construction placed upon it by the learned Vice-Chancellor. See *3 Page on Wills,* § *974.*

It is contended that the court below erred in allowing a counsel fee and costs to the respondent, William Mattson, the executor named in the will, to be paid out of decedent's personal estate. It is said that the only controversy was with reference to the real property and additionally that the counsel fee was excessive. We find no merit to these assertions. The executor was made a party defendant to the bill of complaint filed by the appellant. He was justified in employing counsel to defend the action. The payment of the counsel fee and costs is properly chargeable to the personal estate in his hands which includes not only the cash in bank but the value of the building and loan association stock, household furniture and the like. According to the construction placed on the will by the Vice-Chancellor, the real estate will pass to the decedent's heirs-at-law and will not come under the control of the executor. In view of the time and service devoted by the executor's solicitor we conclude that the counsel fee allowed was not excessive.

The Vice-Chancellor denied counsel fee and costs to the solicitor of the defendants, Martha Eastlack et al. The executor's efforts in defending the bill of complaint redounded to the benefit of the other defendants and such services as may have been rendered by their solicitor were duplicative and unnecessary to say the least. The Vice-Chancellor's action in denying them a counsel fee and costs was entirely proper.

The decree appealed from will be affirmed.

440 

*For affirmance*—THE CHIEF-JUSTICE, BODINE, DONGES, HEHER, COLIE, WACHENFELD, EASTWOOD, BURLING, WELLS, DILL, FREUND, MCGEEHAN, MCLEAN, JJ. 13.

*For reversal*—None.