MARGERY D. SALTER & others *vs.* EDWARD W. SALTER & others.

Essex.   November 6, 1958. — January 15, 1959.

Present: WILKINS, C.J., SPALDING, WILLIAMS, COUNIHAN, & WHITTEMORE, JJ.

*Devise and Legacy*, Gift of "funds," Residuary clause.   *Words*, "Funds."

Real estate acquired by an educated unmarried testatrix after she drew and executed a will with apparently no thought of acquiring real estate in addition to land which she then owned but subsequently sold descended on her death as intestate property to two brothers and a nephew, and did not, as contended by her grandnieces and grandnephews, pass to them under clause 2 of her will, which by clause 1 specifically devised the land she owned at the time of execution of the will to another nephew, by clause 2 gave "any funds remaining after the settlement of my estate" to her grandnieces and grandnephews, by clause 3 bequeathed her books to the second nephew, and by clause 4 bequeathed "all personal property, clothing, jewelry, silverware, household furnishings" to the families of her three nephews with the provision that anything they did not wish to retain should be disposed of by the executor and the proceeds "divided as indicated in Clause 2."

PETITION IN EQUITY, filed in the Probate Court for the county of Essex on November 4, 1957.

The case was heard by *Phelan*, J.

*Richard D. Gerould*, for the petitioners.

*M. James Zelman*, (*I. Jack Levy* with him,) for the respondents.

WILLIAMS, J.   This is a petition under G. L. c. 231A for the construction of the will of Edith Salter Allen, late of the State and city of New York, who died on March 4, 1957. Her will which had been executed in this Commonwealth on December 1, 1946, was allowed by the Surrogate's Court of the city of New York on May 9, 1957, and filed and recorded in the Probate Court for Essex County under G. L. c. 192, § 10, on September 3, 1957.   It provided as follows: "After the payment of my just debts and funeral charges,

I bequeath and devise as follows: — Clause 1. My property in Stephentown, New York, to my nephew John Ewen Salter. Clause 2. Any funds remaining after the settlement of my estate, to be divided as equitably as may be among my grandnieces and grandnephews. Clause 3. My books to my nephew John Ewen Salter. Clause 4. All personal property, clothing, jewelry, silverware, household furnishings, to be divided among the families of my three nephews, William Berrian Salter, John Ewen Salter, and Thomas Lowell Salter. Anything they do not wish to retain is to be sold or otherwise disposed of by the executors, and the purchase price is to be divided as indicated in Clause 2. Clause 5. That the bound volumes of my mother's songs and copies of my father's compositions be kept in the family."

The testatrix was unmarried and left as her only heirs and next of kin two brothers, Edward W. Salter and William F. Salter, and a nephew, Thomas Lowell Salter. When the will was executed the testatrix owned land in Stephentown, New York, but sold it on October 7, 1953. On April 23, 1949, she acquired land with the buildings thereon in Rockport, Massachusetts, which property she owned at the time of her death. It is agreed that this real estate has an approximate value of $16,000 and is subject to an outstanding mortgage on which the balance due is about $2,400. The judge found that "The testatrix, a graduate of Vassar and a very intelligent woman, drew her own will. She had worked for many years as a secretary in and about the city of New York. She was very friendly with a nephew, John E. Salter, who worked in New York, visited her frequently, went to lunch with her several times each week, and was mentioned in said will in paragraph 1." She left "personal belongings valued at about" $1,200. The question of construction which is raised by the petition is whether this Rockport real estate is devised by the will under clause 2 to the petitioners who are the grandnephews and grandnieces of the testatrix or whether it descends as intestate property to the respondents. A decree was entered declaring that this real estate, "not

having been disposed of by will, passes as intestate property." From this decree the petitioners appealed.

It is provided by G. L. c. 191, § 19, that "[a]n estate, right or interest in land acquired by a testator after the making of his will shall pass thereby in like manner as if possessed by him at the time when he made his will, unless a different intention manifestly and clearly appears by the will." The petitioners contend that clause 2 of the will is to be construed as a general residuary clause and that the real estate passes under it to the beneficiaries therein named.

If a reading of the whole will "produces a conviction that a particular interest . . . must have been intended to have been given not expressed by formal words, the court must supply the defect by implication, and so mould the language . . . as to carry into effect the intention which it is of opinion has by the instrument as a whole been sufficiently declared." *Eustace* v. *Dickey*, 240 Mass. 55, 73. *Metcalf* v. *First Parish in Framingham*, 128 Mass. 370, 374. Courts, however, "have no power to reform wills. Hypothetical or imaginary mistakes of testators cannot be corrected. Omissions cannot be supplied. Language cannot be modified to meet unforeseen changes in conditions. The only means for ascertaining the intent of the testator are the words written and the acts done by him." *Sanderson* v. *Norcross*, 242 Mass. 43, 46.

Clause 2 is clearly residual since it disposes of "[a]ny funds remaining after the settlement of my estate." The question for decision is whether by the use of the word "funds" the testatrix disposed of the real estate which she later acquired. That which she owned when her will was executed was specifically devised, and if she had died before purchasing the Rockport property in 1949 the term "funds" would necessarily have had application only to personal property. Although in certain circumstances the term has been construed to include real estate (see *Jennings* v. *Jennings*, 299 Ky. 779), ordinarily it is used to describe an accumulation of money or collection of securities set apart and held for a definite purpose. We think that such was the sense in which the testatrix used it. After the disposal of the

Stephentown property the balance of her estate must have consisted of her savings and the personal property generally referred to in clause 4. In respect to the latter she provided that such articles as her beneficiaries did not wish to retain might be sold by her executors and the proceeds distributed under clause 2. That clause, following, as it does, the clause relating to her real estate, seems to refer only to personalty. So far as appears her subsequent acquisition of other real estate was then unforeseen. Her general intent, as evidenced by the will, to benefit the petitioners to the exclusion of her heirs at law ought not to induce a construction of the term in question in a sense which in all probability she did not intend. This is the opinion of a majority of the court.

*Decree affirmed.*