*In re* BRUIN ESTATE.

MANN *v.* SALVATION ARMY.

Wills — Construction of Holographic Will — Cash — Bonds — Equally Divided Court.

  Construction of expression in a holographic will that "any cash over & above what it takes too pay Said persons off I want left too Salvation Army" by probate and circuit courts as including $50,000 in bonds otherwise left intestate, where commercial bank account was insufficient to pay all of the money bequests testator had made, elsewhere his sole heir was left a specific bequest, and elsewhere he had made a specific bequest of a bond is affirmed by an equally divided court.

Appeal from Chippewa; Baldwin (George S.), J. Submitted January 11, 1963. (Calendar No. 31, Docket No. 49,534.) Decided April 5, 1963.

In the matter of the estate of Archie T. Bruin, deceased. Final account of executor contained petition asking for construction of will and for instructions as to how to distribute residue, which was claimed by Helene Mann, heir-at-law, and by the Salvation Army, a legatee. In probate and circuit courts executor ordered to assign residue to Salvation Army. Plaintiff Mann appeals. Affirmed by an equally divided court.

*Burney C. Veum,* for plaintiff.

*Clevenger & James,* for defendant.

References for Points in Headnote
57 Am Jur, Wills § 1150.

CARR, C. J. (*for reversal*). This case involves the interpretation of a clause of a holographic will executed by Archie T. Bruin, a resident of Chippewa county, Michigan, on October 18, 1958. Mr Bruin deceased on December 27, 1959. The instrument as written by the testator was admitted to probate, apparently without objection. It reads as follows:

"Archie T. Bruin

"I Leave
                                            Oct. 18th 1958
"I leave my {farm rifel / form, rifly} ring, watch & five hundred dollars too Lawence Smart.

"My home 401 Dawson too Roberta Samuell.   {when house is sold / Mrs. Royer too get / 1/2 the selling price

"Robert Kerr five hundred dollars

"Janett Zimmerman one thousand dollar & five thousand dollars Bond.

                                            dollars
"My four sisters five hundred ∧ each.
"Mrs. Gene Mann two thousand dollars
"Keneth Mann five hundred dollars
"Colista Mann McNabb, five hundred dollars
"Janett Zimmerman, my car and any furniture she wants from my house & shot gun, and all the furniture
"Len Bruin Jr. five hundred dollars.  F. Bruins Son
"Alf Bruin five hundred dollars.  Lions Head Ont.
" {Dicke Brown five hundred dollars.  Janetts sister
" {Lou Sutts one hundred dollars          "          "
" {Tuets Sutts five hundred dollars.  Lous daughter
"Mrs. Elizabeth Royer two hundred dollars.
"Bettie Kerr Bricker five hundred dollars
"Joe Trumbly five hundred dollars

"Any cash over & above what it takes too pay
Said persons off I want left too Salvation Army
Sault Ste. Marie, Michigan

"Any furniture Janet Zimmer-⎰rest goes too
man dont want ⎱Roberta Samuells

"Witness J. Willard Walker
"Witness Verna Dickson

"I want Lawrence Smart too be my
Administrator.

"Archie T. Bruin"

At the time of his death Mr. Bruin was the owner of the real estate mentioned in the will, together with household furniture, personal effects, and an automobile. He had a commercial account in a Sault Ste. Marie bank containing a deposit of $3,827.75, and savings certificates therein in the aggregate sum of $13,000. He was also the owner of $50,000 in United States government bonds, $10,000 "series G" and $40,000 "series H." A "series H" bond in the sum of $5,000 stood in the joint names of Mr. Bruin and Janet Zimmerman, who was his housekeeper during the latter years of his life and 1 of the beneficiaries named in the will.

The stepson of testator was designated by the latter as administrator and was appointed executor by the court. In his final accounting showing receipts and disbursements he asked that the court construe the will and give instructions as to the distribution of the assets of the estate. The controversy between parties in interest on the hearing of the petition involved the interpretation of the clause of the will reading as follows:

"Any cash over & above what it takes too pay Said persons off I want left too Salvation Army. Sault Ste. Marie, Michigan."

The question at issue, as presented in the probate court and on appeal in circuit court, was whether

the $50,000 in bonds in the estate passed to the Salvation Army in addition to the balance of the cash remaining after the payment of the specific legacies. On behalf of the appellant here, the daughter and sole heir-at-law of Mr. Bruin, it was claimed that the balance of the cash was the sum of $6,527.75. On behalf of the Salvation Army it was insisted that the word "cash" should be construed to include not only the balance of cash on hand but also the government bonds. In support of such claim the testimony of Mrs. Janet Zimmerman was offered, apparently on the theory that the will was ambiguous, that the testator may have considered that the term "cash" included the bonds, and that Mr. Bruin had expressed an intent to leave the greater portion of his estate to the Salvation Army. The judge of probate, apparently impressed with such testimony, construed the clause in question as including the bonds, and the circuit court on appeal affirmed the decision. On behalf of testator's daughter and sole heir it was insisted that the will was not ambiguous, that the term "cash" has a definite fixed meaning, and that there was nothing in the will as drawn by testator to indicate that he intended to give it the comprehensive scope accepted by the circuit court.

It appears that Mr. Bruin had been engaged in his lifetime in the buying and selling of cattle. It is admitted that he was a successful businessman and familiar, at least, with ordinary business transactions. He purchased the bonds over a period of years and regularly drew the interest thereon. It appears from the record that the will in question was not his first attempt to make testamentary disposition of his property. The instrument in question indicates that he had in mind the parties to whom he wished to make specific bequests, and there is no question as to the clarity of the instrument in that respect.

It is also in evidence that during his lifetime Mr. Bruin had not been a member of, nor had he attended meetings of, the Salvation Army, nor had he made contributions to it. The specific provision of his will indicates that he desired to assist it in the manner stated, but it is significant that in so doing he referred to "any cash" over and above the amount necessary to satisfy the specific legacies previously stated. It is scarcely conceivable that he did not appreciate the difference between cash and the bonds in which he had invested. Instead of using a term of limited scope the question naturally suggests itself why, if such was his intent, he did not leave all property not disposed of by the specific language of the will to the Salvation Army. The fact remains that he did not do so, and in construing the instrument we must be governed by the language used. We are, of course, concerned with the intention of the testator, which under the general rule is to be carried out if it be possible to do so. However the intention is to be gleaned from the instrument itself, and we may not indulge in speculation that he intended to express a meaning other than appears from the language used.

As indicating that testator realized the difference between cash and bonds, attention is directed to the fact that he left to his housekeeper the sum of $1,000 and a $5,000 bond. This would appear to justify the inference that he did not regard the bonds as cash. It is also significant that in the clause especially in question here he used the expression "any cash" in excess of what was needed to pay off the legacies. Had he considered the bonds as cash, with the intention in mind of leaving to the Salvation Army all his property not specifically disposed of in the will, it is a fair conclusion that he would have used "all" instead of "any." As before noted, we must construe the intention of the testator on the basis of what he

said without attempting to enlarge the scope of his language or reading into the will a property disposition that he did not make.

On behalf of appellee it is urged that the language in dispute should be construed to avoid partial intestacy. However the evidenced intent is controlling. As was well said in *Williams* v. *McKeand,* 119 Mich 507, 510 (75 Am St Rep 420):

"The rule that such a construction should be given as will, if possible, avoid intestacy, is invoked; also, the rule that the will speaks from the time of the death of the testator; and undoubtedly the intention should be sought with both rules in mind, but neither rule should be so applied as to extend the force of terms which are obviously restricted."

Questions of construction analogous to that involved in the case at bar have frequently arisen. In *Christ's Home* v. *Mattson,* 140 NJ Eq 433 (55 A2d 14, 173 ALR 651), the testatrix, who apparently wrote the will herself, made a number of bequests to named parties and then provided in the final paragraph that:

"What money there is left to go *Crhist* Home, Warminster Bucks Co, Pa."

Testatrix at the time of her death had cash in a bank in the sum of $3,814.27. She also owned 2 parcels of real estate and some building and loan association stock. The trial court held that the clause quoted did not include the real property or the stock. On appeal the decision was affirmed, the court saying, in part (p 436):

"We have carefully considered the arguments of counsel and the authorities advanced by the parties in support of their respective contentions, and conclude that the decree appealed from is proper. It is well settled by the greater weight of respectable au-

thority that 'money' means money and money only unless there is in the context of the will something to indicate that the testator intended a more extended meaning. Confining our attention to the specific context of the will before us, we are unable to ascertain therefrom that the word 'money' appearing in the paragraph 'What money there is left to go *Crhist* Home, Warminster Bucks Co, Pa,' was intended by the testatrix to mean anything other than 'money,' as it is commonly and universally understood to mean cash in hand or on deposit to the credit of decedent. It has been said repeatedly, the court's main concern is not so much what the testator meant to say as it is to determine what he meant by what he did say. We cannot speculate as to the testator's intention; we must ascertain that intention from the 4 corners of the will. (Citing cases.)"

In support of its conclusion the court cited with approval *Ricardo* v. *Kelly, State Tax Commissioner,* 134 NJL 540 (48 A2d 897), where it was said (pp 543–545):

"The judicial interpretative function is to find the meaning of the testator's expression; and if the testamentary purpose is revealed by terms that are clear and unequivocable, viewed in the light of the surrounding circumstances, there is no room for construction in its general connotation. *In re Fisler's Estate,* 133 NJ Eq 421 (30 A2d 894). The spirit prevails over the letter of the testament. All principles and rules in aid of interpretation yield to the intention exposed by the context. The words are to be given their primary and natural significance unless the context makes it clear that they were employed in a different sense. The *prima facie* meaning of the terms cannot be rejected in favor of a larger construction without an explicit indication of such a purpose. *National State Bank of Newark* v. *Stewart,* 135 NJ Eq 603 (39 A2d 435). Conjecture and speculation as to the testamentary intention are inadmissible. The statute of wills (RS 3:2–3 [NJSA 3A:3–2])

directs that, except as to nuncupative wills, the testamentary design shall be in writing and authenticated as therein prescribed; and thus the testator's intention, to be enforceable, must be found in the words of the will, considered as a whole in relation to the attendant circumstances. The aim of construction is not to find the unexpressed intention of the testator, but that expressed in the language of the will. The judicial function is not to redraft or revise the will, but only to construe the will that the testator has made. (Citing cases.)  *  *  *  The words cannot be distorted or enlarged to effectuate a wholly unexpressed intention. The language may be changed or moulded to fulfill an intent clearly and indubitably revealed by the context, but not to give effect to some supposed unexpressed design not otherwise appearing or to do that which the testator did not have in view at all. *McDonald* v. *Clermont,* 107 NJ Eq 585 (153 A 601)."

*Stannard* v. *Barnum,* 51 Md 440, was a suit to obtain a judicial construction of a will. After certain specific bequests the testatrix provided that any "balance of money" left after the payment of debts and funeral expenses should be divided between 2 named individuals. It was contended that the clause was equivalent to a general residuary devise and included all of the estate of the testatrix not previously disposed of by her. The court declined to so consider it, saying (p 455):

"Here the bequest is simply of *'a balance of money.'* The context shows, that the testatrix meant to dispose of only what belonged to her consisting of money, and the language of the will does not support the theory of the appellant, that the testatrix meant by those words to dispose of her interest and estate in the hotel property. Such an interest and estate will not ordinarily pass under a bequest of 'money.' *Mann* v. *Ex'rs of Mann,* 1 Johns Ch (NY) 231. There is nothing in the context to show, that the testatrix

used the word money in any other than its customary and popular sense, and to extend its meaning, so as to embrace her interest in the hotel property would be doing violence to the real intent of the testatrix.

"In our opinion, the will operates only to dispose of the money belonging to the testatrix, arising from her annuity, and that she died intestate of all her interest and estate in the hotel property. We therefore, on this question, concur in the opinion of the circuit court."

A like conclusion was reached in *Mann* v. *Mann,* 14 Johns (NY) 1 (7 Am Dec 416), which involved the construction of a clause in a will in terms giving "all the rest, residue and remainder of the *moneys* belonging to my estate, at the time of my decease" to a named beneficiary. The question arose whether such beneficiary was entitled to all the bonds, mortgages, notes, and choses in action belonging to the estate of the testator, or only to the cash. The court recognized the generally accepted rule that the intention of a testator must be gathered from the language of the instrument. It was held that the term "moneys" could not be extended to include choses in action. It was pointed out specifically that the term was less applicable to a bond than to an account. It is of interest also to note that the court passed on the admissibility of parol evidence as bearing on the testator's intent, it being determined that there was no ambiguity calling for explanation and that the testator had used plain, intelligible, and appropriate terms. The court said, in part (pp 14, 15):

"The inquiry into the situation of the testator's property (admitting we were authorized to notice it) would not, in any manner, explain his intention with respect to his *choses in action.* Such intention would still be left to be collected from the will itself. To receive the verbal declarations of the testator to contradict or enlarge the plain and obvious import

of his written language, would not only be repugnant to the most sound and salutary rules of law, and an alarming precedent, but would infringe upon the spirit and policy of the statute, which declares, that no will in writing concerning any personal estate shall be repealed, or any part thereof revoked or altered by any words, or will, by word of mouth only."

In accord with the foregoing decisions are *In re Conlin's Estate,* 388 Pa 483 (131 A2d 117), and *In re Ware's Estate,* 218 Miss 694 (67 S2d 704). We think the rule of construction applied in the above decisions, and in others of like import, is applicable in the case at bar. Where a specific term is used with an apparent restricted meaning it should be so interpreted. *Stender* v. *Stender,* 181 Mich 648. The Court may not indulge in speculation or conjecture in construing a testamentary disposition of property. *LaMere* v. *Jackson,* 288 Mich 99, 103. Neither does the fact, as in the case at bar, that an heir is left a specific legacy bar the right to inherit intestate property. *In re Brown Estate,* 362 Mich 47.

For the reasons indicated the provision of the will of the testator here in question must be construed as it reads. An intent to give other than the ordinary meaning to the terms used does not appear from the instrument, the language of which must necessarily govern, notwithstanding claimed expressions by the testator of a different intention than that evinced by the expressions used by him. Ambiguous statements in a will may be explained by competent testimony, but where the intent of the written instrument clearly appears from language that is not ambiguous, such testimony is not competent, nor is testimony of the character introduced in the instant case competent for the purpose of laying a foundation for a claim of ambiguity.

The order of the circuit court should be reversed and the case returned to that court for remand to the probate court with directions for administration proceedings in accordance herewith.

DETHMERS, KELLY, and O'HARA, JJ., concurred with CARR, C. J.

SOURIS, J. (*for affirmance*). I do not agree with the opinion of the Chief Justice. While denying ambiguity in testator's use of the word "cash" in his bequest to the Salvation Army, and insisting that it is a term of "limited scope" and "ordinary meaning," the Chief Justice concludes that it means something more than the coin and currency of the realm, the record showing that testator had none at his death; that it means the $3,827.75 balance at death in a commercial bank account and, as well, $13,000 worth of certificates of deposit; but that it does not include series G and H United States savings bonds of the value of $50,000. Absent a residuary clause in the will, all of such bonds (over 50% of the estate) are said to pass by our rules of intestate distribution to testator's sole heir, a daughter born of a first marriage who resides in Canada and whom testator had not seen for several years, but to whom he had, by another provision of his will, bequeathed $2,000.

This result seems to me far from the testator's intention, which we are obliged to ascertain not by imposition of our own notions of the words he used to express his intentions and not by application of other courts' interpretations of similar language used by other testators in circumstances totally different from those faced by this testator, but rather "from a consideration of all the provisions of the will itself and in the light of the circumstances surrounding the testator at the time the will was made and his relations with the several objects of his

bounty." *Kirsher* v. *Todd,* 195 Mich 297, 309. See, also, *Mills* v. *Butler,* 364 Mich 422.

There is a strong presumption in this State against partial intestacy (*Toms* v. *Williams,* 41 Mich 552; *Mann* v. *Hyde,* 71 Mich 278; *Foster* v. *Stevens,* 146 Mich 131; *Shattuck* v. *Fagan,* 337 Mich 83; and *In re McKay Estate,* 357 Mich 447) and, although the presumption is not conclusive (*Shattuck* v. *Fagan, supra,* at p 89), we have said that we will adopt any reasonable construction of a will to avoid it (*In re Chapple's Estate,* 338 Mich 246, and *Hay* v. *Hay,* 317 Mich 370, at p 403). Bruin's partial intestacy can be avoided, quite reasonably in my view, by giving to the word "cash" that meaning which the record discloses Bruin himself and his farm neighbors and business associates gave to it,—a meaning which includes government bonds as well as certificates of deposit. The record discloses that Bruin during his lifetime referred to his bonds as cash and, in the conduct of his business, at times used bonds to buy cattle.

Our presumption against partial intestacy is reinforced by consideration of the obvious care Bruin exercised in the preparation of his holographic will to the disposition of all of his real estate, tangible personal belongings and his "cash." Intestacy results, not just as to property Bruin understandably could have overlooked, but as to the major portion of his estate, the bonds, only if we restrict the meaning of the word "cash" as he used it in the bequest to the Salvation Army.

While conceding that an heir who is left a specific bequest is not thereby barred from inheriting intestate property (*In re Brown Estate,* 362 Mich 47), it would seem to me that a bequest of a specified sum of money to testator's sole heir strongly suggests that he did not intend that all of his bonds also pass to her by intestacy.

Another factor worth considering is that Bruin did not possess, either when he made his will or when he died, sufficient funds in his commercial bank account to pay all of the money bequests he made. Having specifically devised and bequeathed all of his real estate and tangible personal property, obviously he must have contemplated use of his certificates of deposit or his bonds, or both, in addition to his commercial bank account to pay the bequests. In fact, the certificates of deposit were so used. There is nothing in his will, or in this record, to suggest that Bruin intended his certificates of deposit to be considered as "cash," but not his bonds; nor is there offered any explanation why his executor treated the certificates of deposit as cash, but not the bonds.*

Absent any indication in Bruin's will, or otherwise, that he intended the bulk of his estate to pass by intestacy to his sole heir to whom he otherwise bequeathed $2,000, and absent any other reason to give the word "cash" a meaning more restrictive than the record discloses he customarily gave that word during his lifetime, I would construe the bequest to the Salvation Army to include the testator's bonds as well as the remaining certificates of deposit, as did the probate judge and the circuit judge, thereby avoiding his partial intestacy. Accordingly, I would affirm the order below and award costs to appellee.

BLACK, KAVANAGH, and SMITH, JJ., concurred with SOURIS, J.

---

* Liquidity could not have been the determining factor, for the certificates of deposit were expressly made payable only at specified 6-month maturity date intervals, whereas the bonds were redeemable upon 1 month's notice.