*In re* ESTATE OF JENNIE BRECKENRIDGE, Deceased.—(RAYMOND ZINN *et al.*, Petitioners-Appellees, *v.* D. W. McGINNIS *et al.*, Defendants.—(VERLA CRAIN *et al.*, Defendants-Appellants.))

Fourth District   No. 14609

Opinion filed January 13, 1978.

Michael J. Costello and J. H. Weiner, both of Springfield, for appellants.

R. E. Dehen and Melvin N. Routman, of Routman & Lawley, both of Springfield, for appellees.

Mr. JUSTICE WEBBER delivered the opinion of the court:

This appeal lies from an order of the circuit court of Sangamon County construing the will of Jennie Breckenridge.

The testator executed the instrument on February 23, 1971, and died March 12, 1976. The estate consisted of about $30,000 in cash, and $170,000 in real estate, situated partially in Illinois, but some in other States.

In pertinent parts, the will provided:

> "SECOND: For my cash I give and bequeth [*sic*] and hereby make the following bequests."

Then follow 16 cash bequests, totaling $19,700, 1 to a cemetery, and 15 to named individuals. Six of the individuals are shown on the table of heirship as being heirs of the testator.

> "THIRD: All of the rest and residue of monies remaining after payment of the aforementioned legacies, I bequeath to D. W. McGinnis, Elma Schneider, and Raymond Zinn in equal shares to be theirs absolutely, forever and in fee simple."

Each of the three residual beneficiaries are found to be heirs of the testator, but only McGinnis shared in the cash bequests.

D. W. McGinnis and Raymond Zinn, residuary beneficiaries as above stated, were named as co-executors and qualified as such. In the process of administration, they filed a petition to sell real estate and as part of that petition alleged the need for construction of the will, particularly item THIRD, the residue clause. No questions are raised as to the pleadings.

Five of the answering defendants, who are the appellants in this cause, alleged that title to the real estate had already vested in the heirs of the testator. These defendants were three persons found to be heirs but omitted in the will; one person found to be an heir and also a pecuniary legatee under the will; and one person, also a pecuniary legatee, but found not to be an heir although the will describes her as a "great-niece."

The trial court entered an order construing the will which order provided in part as follows:

> "It was the intention of the decedent to die testate with respect to all her assets; and, therefore, her real estate as well as all other of her assets passed pursuant to her said will."

The effect of the order is, then, to vest the real estate under the residuary clause in the three named residuary beneficiaries.

The appellant-heirs' principal theory is that the residuary clause operated only on money items and not on real estate. The appellee-residuary beneficiaries claim that "monies" is a broad enough term to include real estate and cite the familiar rule of presumption against intestacy.

We have been cited numerous authorities by both sides but none of these is particularly helpful in that, according to the ancient legal adage, "no will has a brother." We have also been cited various rules of construction, but few of them have any application to the case at bar.

The foundation upon which any construction suit is built is an ambiguity. Ambiguities may arise in several ways: (1) Imperfection of language, or imperfect use of language by a testator; or (2) the happening of contingencies over which the testator had no control or which were beyond his contemplation; or (3) a lack of specific intent on the part of the testator. Resort to rules of construction in (1) above is rarely necessary, but is almost inevitable in (2) and (3). Rules of construction are simply artificial devices by which courts find an intent when very probably none existed at the time the instrument became operative. As Professor Gray once said (Nature and Sources of Law 316 (1916)), "When the judges say they are interpreting the intention of a testator, what they are doing, ninety-nine times out of a hundred, is deciding what shall be done with his property on contingencies which he did not have in contemplation."

■■ In the case at bar no subsequent event has occurred, such as the birth of another child after a class has presumably closed, to cast doubt upon the testator's intent. We are dealing with the first situation described above—imperfection of language; and in such a situation it is the duty of the court to give effect to the entire will, no matter now ungrammatical its construction or how tortured its syntax or how unorthodox its word usage. *Whitmore v. Starks* (1959), 17 Ill. 2d 202, 161 N.E.2d 254; *Carr v. Hermann* (1959), 16 Ill. 2d 624, 158 N.E.2d 770.

Turning, then, to the instrument in the instant case, it is at once apparent that the testator had different classes of assets in mind. Item SECOND commences with the words, "For my cash * * *" and then distributes specific amounts. Items THIRD commences with the words, "All of the rest and residue of monies * * *" and concludes "in equal shares to be theirs absolutely, forever and in fee simple." The general testamentary scheme is clear—a series of small cash legacies to relatives, nonrelatives, and the cemetery, with the residue after payment of these to three named individuals, not to a class. It is also noteworthy that only one of the three residuary beneficiaries received a cash bequest.

The critical word is "monies." As pointed out above, appellant-heirs

believe this means what cash was left after the payment of the legacies. We do not read it so narrowly. In its broad sense, it means "wealth," and is often so used in common parlance; *e.g.*, "the moneyed class," which may possess real estate, chattels, stocks, bonds, *etc.*, in addition to specie and paper; to be "in the money," meaning "wealthy," "flush," "loaded," with all manner of assets.

■■ In a Texas case (*Flower v. Dort* (Tex. Civ. App. 1953), 260 S.W.2d 685), the court said:

> "In construing a will it must be ascertained from the general context of the will whether the testator used the words 'money' or 'cash' in a restricted or in a more comprehensive sense * * *. In its more comprehensive sense 'money' means wealth, the representative of commodities of all kinds. It is accordingly often popularly used as equivalent to 'property' and when the intention of the testator so to use it is manifest, it may include all kinds of property, real and personal." (260 S.W.2d 685, 688.)

It seems apparent to us, given the difference in language between items SECOND and THIRD in the will, that the testator did mean money in its more comprehensive sense, as described by the Texas court.

One Illinois case is reasonably close to the case at bar, *Wickizer v. Whitney* (1936), 364 Ill. 125, 126, 4 N.E.2d 46. In that case the testator indicated her "desire to have my property and belongings divided and given as herein written do so will, bequeath and devise * * *." She then disposed of only cash legacies but made no mention of real estate. The supreme court held the will sufficient to pass real estate. While the will in the *Wickizer* case speaks of "property" instead of "monies," as in the case at bar, we view both words in their generic sense as heretofore mentioned.

Much has been said in the briefs of the parties about the presumption against intestacy. We do not address this issue since the view we take of the case makes it irrelevant. In any event, it is a rule of construction and as pointed out above, rules are useful only in cases of unforeseen contingencies. Furthermore, as a matter of logic, the rule would not be invoked unless a will in question rather closely paralleled the Statute of Descent. This is especially true since the abolition of the doctrine of worthier title. (Ill. Rev. Stat. 1975, ch. 30, par. 188.) In the instant case there is no parallel; of the 15 cash bequests to individuals, only 6 of them go to heirs; of the 10 heirs as found on the table of heirship, 1 receives money and residue, 2 receive residue only, 5 receive money only, and 2 receive nothing.

The order of the trial court was correct and it is affirmed.

Affirmed.

GREEN, P. J., and REARDON, J., concur.