NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

16-P-715                                          Appeals Court

ROBERT ROTH[1] vs.  JOSEPH NEWPOL, executor,[2] & another.[3]

No. 16-P-715.

Suffolk.     March 15, 2017. - May 31, 2017.

Present:  Grainger, Massing, & Desmond, JJ.

Devise and Legacy, Residuary interests, Intestacy, Construction
     against intestacy.  Real Property, Tenancy in common.
     Words, "Monies."

Complaint filed in the Suffolk Division of the Probate and
Family Court Department on January 23, 2014.

The case was heard by Virginia M. Ward, J., on motions for
summary judgment.

Rebecca P. McIntyre for the defendants.
Michael C. Fee (Scott M. Zanolli also present) for the
plaintiff.

---

[1] As personal representative of the estate of Philip E.
Shakir.

[2] Of the estate of Evelyn Shakir.

[3] George Ellenbogen.

MASSING, J.  The only issue in this appeal is whether a residuary clause in the last will and testament of Evelyn Shakir, disposing of "any monies remaining in [her] estate," encompassed her one-half interest in the house in the West Roxbury section of Boston (property) where her brother, Philip Shakir, lived before his death.  The plaintiff, representing Philip's estate, contends that Evelyn's will did not devise her interest in the property and, therefore, that it passed by intestate succession to Philip, her only heir.[4]  The defendants -- Joseph Newpol, who is Evelyn's executor, and her life partner, George Ellenbogen -- contend that Evelyn's one-half share in the property passed to Ellenbogen through the will's residuary clause.  On cross motions for summary judgment on the plaintiff's complaint to quiet title, a judge of the Probate and Family Court held that Evelyn died intestate as to her interest in the property, that Philip acquired Evelyn's interest by intestate succession, and that Philip's estate now possesses sole legal title to the property.  We affirm.

Background.  The property consists of the family home where Evelyn and Philip grew up.  When their mother died in 1990, they each inherited a one-half interest in the property as tenants in common.  Philip, who lived with his mother until her death,

---

[4] Because they share a surname, we refer hereafter to Evelyn Shakir and Philip Shakir by their first names to avoid confusion.

continued to reside at the property for the remainder of his life.

Evelyn and Ellenbogen were English professors and writers. In 1988, they bought a house in West Roxbury, where they lived together until Evelyn's death in 2010. Ellenbogen drafted Evelyn's will using a model that a colleague had provided to him. Evelyn executed the will about six weeks before she died. Philip died approximately two years later, in 2012.

The will. The will does not mention the property, and we do not speculate as to the reason for this omission. See Boston Safe Deposit & Trust Co. v. Buffum, 186 Mass. 242, 243 (1904) (duty of court is "to construe the will which the testator has made, not to speculate on [her] intentions and make a will for [her]"). The defendants contend that the will nonetheless accounts for the property in the clause captioned "Residuary estate" in Article 2 of the will. The "cardinal rule for the construction of wills" is "that the intention of the testator is to be ascertained from the whole instrument, attributing due weight to all its language, considered in the light of the circumstances known to [her] at the time of its execution and, when so ascertained, that it be given effect unless some positive rule of law forbids." Sutherland v. Flaherty, 1 Mass. App. Ct. 388, 390 (1973). See Boston Safe Deposit & Trust Co.

v. <u>Wilbur</u>, 431 Mass. 429, 433 (2000).  Accordingly, we turn to the language and organization of Evelyn's will.

After a brief discussion of funeral arrangements in Articles 1A and 1B, Article 2, entitled "Disposition of property," begins with "specific bequests" that Evelyn directs "be made from my estate (which consists of investments at Fidelity, . . . TIAA-CREF . . . and Bank of America)."  She starts with an "outright gift" of $20,000 to the Virginia Center for the Creative Arts (VCCA).  Of "the remaining cash assets," which total approximately $500,000, Evelyn directs that $150,000 be kept in trust to provide annual income of up to $8,000 for Philip, with "the remaining corpus of funds" to be paid to VCCA upon Philip's death.  Another $150,000 is to go to Ellenbogen, with "that amount" to be paid to VCCA upon his death.  Next comes a of list of specific dollar amounts "of the gross estate" to be paid to specified individuals and charities:  one gift in the amount of $500, four in the amount of $5,000, and eleven in the amount of $10,000.  Her automobile and personal property are left to Ellenbogen.

The provision immediately after the specific bequests reads as follows:

> "B.  Residuary estate
>
> "I direct that any monies remaining in my estate be given to my partner, George Ellenbogen, and, upon his death, to the Virginia Center for the Creative Arts, identified as

the Evelyn Shakir and George Ellenbogen (grant, scholarship, center, or some similar designation)."

The remainder of Article 2 consists of an unlabeled paragraph with instructions for the "proprietorship over [Eveyln's] manuscripts, books, and other personal possessions"; paragraph "C," assigning to Ellenbogen full title to the house that he and Evelyn shared; and paragraph "D," concerning the disposition of a Cape Cod property that Evelyn shared with Philip.[5]

The remainder of the will includes three brief paragraphs (Articles 3 through 5) regarding the nomination of the executor, the executor's powers, miscellaneous provisions, and signatures, none of which illuminates the issue before us.

Does "monies" include real property? A typical residuary clause uses language such as, "I give, devise and bequeath all the rest, residue and remainder of my estate," Matteson v. Walsh, 79 Mass. App. Ct. 402, 408 n.7 (2011), or "[a]ll the rest and residue of my estate real, personal or mixed, wherever it may be found," Meyerowitz v. Jacobovitz, 263 Mass. 47, 49 (1928).[6] To support their claim that Evelyn intended "monies" to

---

[5] "I urge that the property that I share with my brother, Philip, on Sheep Pond in Brewster, be bequeathed to Henry and Yayoi Rosenkrantz, with the proviso that they will not assume ownership during his lifetime and that my partner, George Ellenbogen, be permitted to stay at the property when he chooses."

[6] The Web site Findlaw.com recommends the straightforward "rest of my estate." See http://estate.findlaw.com/wills/

mean all her remaining property of any description, including her interest in the property, the defendants select a definition of "money" from Black's Law Dictionary 1157 (4th ed. 1951):  "In its more comprehensive and general sense, it means wealth, -- the representative of commodities of all kinds, of lands, and of everything that can be transferred in commerce."[7]

   This definition, however, is a secondary definition.  For its primary definition of "money," the same source states, "In usual and ordinary acceptation it means gold, silver, or paper money used as circulating medium of exchange, and does not embrace notes, bonds, evidences of debt, or other personal or real estate."  Ibid.  Moreover, in subsequent editions, Black's Law Dictionary omits the secondary definition and abandons the broad meaning of the term.  See, e.g., Black's Law Dictionary

---

sample-basic-will-annotated.html [https://perma.cc/22MC-8R2N] ("Usually, the residuary clause begins, 'I give all the rest, residue, and remainder of my estate . . .' because lawyers are afraid to change tried-and-true formulas, and for decades, legal documents never used one word when a half-dozen would do. However, this plain-English form will also work").

   [7] See Flower v. Dort, 260 S.W.2d 685, 688 (Tex. Ct. Civ. App. 1953) ("In its more comprehensive sense 'money' means wealth, the representative of commodities of all kinds.  It is accordingly often popularly used as equivalent to 'property,' and when the intention of the testator so to use it is manifest, it may include all kinds of property, real and personal"); Estate of Breckenridge, 56 Ill. App. 3d 128, 131 (1978) ("In its broad sense, it means 'wealth,' and is often so used in common parlance; e.g., 'the moneyed class,' which may possess real estate, chattels, stocks, bonds, etc., in addition to specie and paper; to be 'in the money,' meaning 'wealthy,' 'flush,' loaded,' with all manner of assets").

1005 (6th ed. 1990) ("In usual and ordinary acceptation it means coins and paper currency used as circulating medium of exchange, and does not embrace notes, bonds, evidences of debt, or other personal or real estate"); Black's Law Dictionary 1158 (10th ed. 2014) ("1. The medium of exchange authorized or adopted by a government as part of its currency . . . . 2. Assets that can be easily converted to cash . . . . 3. Capital that is invested or traded as a commodity . . . . 4. Funds; sums of money").

Our case law has also eschewed the broader meaning. See Parker v. Iasigi, 138 Mass. 416, 423-424 (1885) (noting that "[n]o case has been found by the research of counsel in which the word 'moneys' has been held sufficient to include real estate," and holding that the term "moneys" as used in a disputed will was not intended to include an interest in real estate). In Salter v. Salter, 338 Mass. 391, 393 (1959), construing the term "funds," the court noted, "Although in certain circumstances the term has been construed to include real estate, . . . ordinarily it is used to describe an accumulation of money or collection of securities set apart and held for a definite purpose." Accordingly, the court held that a residuary clause disposing of "[a]ny funds remaining after the settlement of my estate" did not dispose of real estate not mentioned in the will. Id. at 393-394.

In our view, the rule of thumb in these circumstances is that "money" should be construed as commonly understood, unless "a reading of the whole will produces a conviction that the testator must necessarily have intended" the broader meaning. Metcalf v. First Parish in Framingham, 128 Mass. 370, 374 (1880). The rule has been aptly set forth as follows:

> "The popular and well understood meaning should be given to the word 'money,' when used in a will, unless from a consideration of the entire instrument, it appears that it was intended by the testator to have a broader meaning. Only where the context of the will and the circumstances surrounding its execution require it will the word 'money' be construed in the broad sense of wealth or property instead of the narrow sense of cash only" (footnote omitted).

80 Am. Jur. 2d Wills § 1088, at 314 (2013). See Sweet v. Burnett, 136 N.Y. 204, 208 (1892) ("But certainly no such violent extension of the word ['money'] beyond its normal and proper meaning can ever be justified unless the intention to so use it is clearly manifest on the face of the will and put beyond all reasonable doubt"); Christ's Home v. Mattson, 140 N.J. Eq. 433, 436 (1947) ("It is well settled by the greater weight of respectable authority that 'money' means money and money only unless there is in the context of the will something to indicate that the testator intended a more extended meaning").

Nothing in the language or context of Evelyn's will supports the broader interpretation. The residuary clause

follows Evelyn's description of "my estate," consisting of approximately $520,000 held in three investment or bank accounts. After an "outright gift" of $20,000, Evelyn leaves $300,000 of "the remaining cash assets" to Philip and Ellenbogen. These gifts are followed by a list of fifteen specific bequests "of the gross estate," in varying dollar amounts. Then, after thus disposing of $440,500 out of approximately $520,000 of the estate, Evelyn directs that "any monies remaining in the estate" go to Ellenbogen. She then accounts for the disposition of her books and manuscripts, her home, and the Cape Cod property she owned with Philip. The placement[8] and language of the residuary clause leave us with the firm conviction, shared by the motion judge, that when Evelyn referred to "monies remaining in my estate" she had no intention to refer to an interest in real property not otherwise accounted for in the will (emphasis added). See Christ's Home, supra ("It has been said repeatedly, the [c]ourt's main concern is not so much what the testator meant to say as it is to determine what [she] meant by what [she] did say").[9]

---

[8] The clause "appears in an odd position," Fishman v. Fishman, 2 Mass. App. Ct. 348, 349 (1974), only if it is meant to operate as a general residuary clause. It is in a natural position if it is intended to account for any money remaining in the estate.

[9] The defendants argue that the caption of the residuary clause, "Residuary estate," supports a broader interpretation

We are cognizant of the presumption against intestacy, under which "a construction of a will resulting in intestacy is not to be adopted unless plainly required; and it is to be presumed that when a will is made the testator intended a disposition of all [her] property and did not intend to leave an intestate estate."  Lyman v. Sohier, 266 Mass. 4, 8 (1929).  "Notwithstanding the presumption, it is well settled that a testator's estate passes by intestacy when the plain language of the will requires such a result."  Flannery v. McNamara, 432 Mass. 665, 670 n.5 (2000).

Nothing in the language or the circumstances surrounding Evelyn's execution of the will, which occurred when Philip was still alive and living in the property, illuminates Evelyn's intent with respect to her interest therein.  "[I]f a reading of the whole will produces a conviction that the testator must necessarily have intended an interest to be given which is not bequeathed or devised by express or formal words, the court must supply the defect by implication and so mould the language of

---

because, "[a]s English professors and writers, Evelyn and George [Ellenbogen] would have selected a title that described in concise fashion what Article 2B was about."  One might equally expect English professors and writers to be precise in their choice of words, and not to have written "monies" if they meant "anything else."  See Strunk & White, The Elements of Style 21 (4th ed. 2000) ("If those who have studied the art of writing are in accord on any one point, it is on this:  the surest way to arouse and hold the reader's attention is by being specific, definite, and concrete").

the testator as to carry into effect as far as possible the intention which it is of opinion that [she] has sufficiently declared."  Fitts v. Powell, 307 Mass. 449, 454 (1940). However, this rule does not apply when "[t]here is nothing in the will that makes it certain what the testator desired to do in the contingency that has arisen."  Ibid., quoting from Bailey v. Bailey, 236 Mass. 244, 247 (1920).

Judgment affirmed.